THOMAS L. LEE, SR., *et al.*, Plaintiffs-Appellees, v. ALLSTATE LIFE INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—04—1260

Opinion filed September 29, 2005.

Stuart L. Whitt and Richard T. Petesch, both of Whitt Law, of Aurora, and Joel S. Feldman and Bruce Braverman, both of Sidley, Austin, Brown & Wood, L.L.P., of Chicago, for appellant.

Robert M. Foote and Craig S. Mielke, both of Foote, Meyers, Mielke & Flowers, L.L.C., of Geneva, for appellees.

JUSTICE BYRNE delivered the opinion of the court:

In this interlocutory appeal, defendant, Allstate Life Insurance Company (Allstate), appeals the judgment of the circuit court of Kane County granting the motion of plaintiffs, Thomas L. Lee, Sr., Mary J. Moore, and Denny Calahan, for class certification of the policyholders whose universal life insurance policies issued by Allstate were subjected to an increased "cost of insurance" charge in 1992. Allstate contends that the trial court erred in certifying a nationwide class, because the extensive factual record demonstrates the need for individual hearings on a host of liability issues and because the claims of non-Illinois class members are governed by varying laws in 50 states and jurisdictions. For the following reasons, we affirm

## FACTS

The record demonstrates that Allstate, which is headquartered in Northbrook, Illinois, issued about 450,000 universal life insurance policies in 50 states and jurisdictions before 1992. These policies contain a "cost of insurance" (COI) charge. The COI charge is one of the factors that determines how much money the policyholder must pay into the policy to maintain it and how much cash value ac-

cumulates in the policy. Allstate determines the COI rates used to calculate the COI charges by evaluating all of its costs and expenses in providing the benefits under its policies. The policies permit Allstate to change its COI rates. The policies state that the rates "will be determined by [Allstate], but they will never be more than the guaranteed rates described on Page 3." The relevant COI provision states that the COI rates are "based on the insured's sex, attained age, and payment class." Allstate argued that it raised its COI rates in 1992 based on the foregoing provision.

In their one-count class action complaint for contract damages, plaintiffs filed the present action against Allstate on March 12, 2003. Plaintiffs' complaint alleged that Allstate breached its contractual obligations by improperly increasing the COI rates on its life insurance policies in 1992. Specifically, plaintiffs alleged that Allstate failed to comply with the policy provision that requires Allstate to base the COI rates solely on the insured's sex, attained age, and payment class. Plaintiffs further claimed that Allstate intentionally misled its policyholders regarding the justification for the COI increase. Plaintiffs alleged that Allstate raised the COI rates to increase profits and improperly recoup deferred acquisition costs on other life insurance products. In sum, plaintiffs alleged that Allstate unlawfully increased the COI charges on the policies of the proposed class of policyholders.

Plaintiffs sought to represent a class of approximately 450,000 persons who purchased Allstate universal life policies prior to April 1, 1992. Plaintiffs, individually and on behalf of all others similarly situated, filed a motion for class certification pursuant to section 2—801 of the Code of Civil Procedure (Code) (735 ILCS 5/2—801 (West 2002)). Plaintiffs contended that common questions of fact and law predominated because all of their claims involved a standard provision of the same type of Allstate policy and all of the questions revolved around one issue: was the practice of Allstate in determining COI rates on these policies a breach of the insurance contract?

In plaintiffs' complaint, they set forth the following common questions of fact: (1) the determination of whether Allstate's COI rate increase to pre-1992 policies violated the policy language that required Allstate to base rates upon the insured's sex, attained age, and payment class; (2) the determination of whether Allstate used the subterfuge of an Internal Revenue Service (IRS) tax accounting change mandated by law to extract unlawful profits from its pre-1992 policyholders; (3) the determination of whether Allstate intentionally misled its policyholders in regard to the implementation of and basis for the COI rate increase; and (4) the determination of a proper and uniform methodology for the calculation of each policyholder's damages.

Allstate raised a number of affirmative defenses to certification of the class, such as the voluntary payment doctrine, the statute of limitations, the need to introduce extrinsic evidence to explain the terms of the contract, that individualized issues predominating over common questions of fact and law required separate hearings, and conflict of law problems.

Allstate also introduced evidence that Congress changed the tax code provisions bearing on how insurers accounted for the expenses incurred in acquiring business. Allstate alleged that this resulted in an approximately $8 billion tax on insurers over five years. According to Allstate, this greater tax burden significantly increased Allstate's cost of doing business, which in turn affected the actuarial assumptions giving rise to the current COI rates in Allstate's universal life products. Allstate alleged that it reflected these changes by increasing its COI charges for its universal life policies, subject to the guaranteed maximum rates.

In its annual reports, Allstate sent its policyholders written notice of the COI rate increase during the 12 months beginning April 1, 1992, when the rate increase became effective. Allstate alleged that many of its agents spoke with their customers to explain the reasons for the increase, either in advance of the increase or after their customers received the written notice. Some of the agents explained that the increase was due to the tax change. Still other agents explained that the rate increase resulted from increases in Allstate's underlying business expenses generally.

Plaintiffs submitted certain Allstate documents that demonstrated that the primary justification and motivation of the COI increase was to increase Allstate's profits. These documents explained that the COI increase would not only cover "recent tax law changes" and increasing expenses but also would help improve "desired financial results" of after-tax net income. Plaintiffs also asserted that, although Allstate agents spoke with individual policyholders regarding the COI increase, it was undisputed that no Allstate agent told a single policyholder that Allstate was raising the COI rates to increase its profits, as plaintiffs alleged. Plaintiffs introduced internal memoranda from Allstate that tended to demonstrate that a concerted effort was made by Allstate's corporate executives to withhold from its entire sales force that it increased the COI rates to increase its profits.

After thoroughly reviewing the record, the arguments, and the statutory prerequisites for the maintenance of a class action under section 2—801, the trial court concluded that plaintiffs' complaint sufficiently alleged all four requirements for class certification. The trial court first found that plaintiffs' class action breach of contract

complaint was based on the allegation that Allstate breached its contractual obligation by improperly increasing the COI charges on its policies in 1992. The trial court noted Allstate's defenses to the certification of the class and the breach of contract claim. Despite the range of defenses presented, the variations of law among states, and the factual circumstances catalogued by Allstate, the trial court found that common factual and legal questions predominated over individual questions. The court held that all of the class members entered into the same type of Allstate insurance contract with the same terms in question, and that all of the proposed class members potentially became subjected to the same type of COI rate increase after the same federal tax law change in 1990, despite Allstate's varying explanations for the increase and the varied losses to class members. Accordingly, the trial court granted plaintiffs' motion for class certification. Thereafter, Allstate filed a timely petition for leave to appeal pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)).

After a full panel of this court reviewed the motion and considered the merits, we denied the petition for leave to appeal. Allstate petitioned the supreme court for leave to appeal. The supreme court issued a supervisory order directing this court to vacate our order denying interlocutory review, to enter an order allowing interlocutory review, and to consider the class certification issue on the merits. As directed, we now consider the class certification issue on the merits.

## ANALYSIS

■ To certify a class action, the trial court must find that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2—801 (West 2002).

Allstate does not dispute that the class is so numerous that it would be impracticable to join all members. Nor does Allstate argue the third and fourth elements for certification. Allstate argues, however, that the trial court erred in certifying the class, because there are too many individual issues to successfully manage the case as a class action. Whether to certify a class action is a matter within the sound discretion of the trial court, and we will reverse the trial court's decision only upon a showing that the court clearly abused its discretion or applied impermissible legal criteria. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1002 (2004).

■ Allstate first contends that the trial court erred in certifying the class action by applying impermissible legal criteria and by ignoring the record in finding that common questions predominate over individual issues. We review without deference whether the court applied impermissible legal criteria. *Mele v. Howmedica, Inc.*, 348 Ill. App. 3d 1, 21 (2004).

In *P.J.'s Concrete*, we held that where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class, the trial court reasonably could find that there are common questions of law or fact that predominate over questions affecting only individual members. *P.J.'s Concrete*, 345 Ill. App. 3d at 1003. We cited the well-known rule that satisfaction of the prerequisite pertaining to predominating common questions of fact or law necessitates a showing that successful adjudication of the purported class representatives' individual claims will establish a right of recovery or resolve a central issue on behalf of the class members. *P.J.'s Concrete*, 345 Ill. App. 3d at 1003; see also *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 452 (2004).

The trial court cited to *P.J.'s Concrete* in framing the predominance issue and in concluding that common questions of law and fact predominate as to plaintiffs' claim for breach of contract. We find that the trial court applied the appropriate legal criteria. We further find that the trial court carefully considered the record in deciding that plaintiffs had met their burden of establishing that there are questions of fact and law common to the class that predominate over questions affecting individual members.

The trial court properly framed the primary factual issues in this case based on plaintiffs' claims that Allstate intentionally misled its policyholders regarding the justification for the COI increase: that Allstate raised the COI to increase profits and that Allstate improperly recouped deferred acquisition costs on other life insurance products. The court believed that, despite the range of defenses presented, the variations of law among states, and the factual circumstances catalogued by Allstate, common factual and legal questions predominated. The trial court found that all of the proposed class members entered into the same type of Allstate insurance contract with the same terms in question and that all of the proposed class members potentially became subject to the same type of COI rate increase after the same federal tax law change in 1990, despite varying explanations for the increase and varied losses by the class members.

It is clear that the trial court did not ignore the record in concluding that common issues predominated. The record demonstrated that plaintiffs presented an internal Allstate document tending to show

that Allstate increased the COI rates to help improve its "desired financial results" and to "impact on [its] competitive standing with the top rated companies." Additional documents revealed that Allstate's anticipated after-tax net income would have been $449 million. With the COI increase, Allstate raised an additional after-tax net income of $20.6 million. This maneuver directly increased Allstate's profits in excess of 4.5%. Despite the internal Allstate document recommending the COI increase to improve its finances, "Lifelines," a publication for Allstate's sales force and managers, informed its agents that it increased the COI rates due to the 1990 federal tax change. Thus, this evidence tends to demonstrate that Allstate's corporate executives made a concerted effort to withhold from its entire sales force the company's profit motivation to raise the COI rates. We find that the trial court reasonably could have found that there are common questions of law or fact that predominate over questions affecting only individual members: that Allstate intentionally misled its policyholders regarding the justification for the COI increase and that the increase, based on the true justification, breached the policy. Certainly, this common issue is predominant and pervasive, founded on essentially identical policies. Once the trial court finds that a predominating question of fact or law exists, the presence of individual questions does not necessarily defeat class certification. *Kennedy v. Commercial Carriers, Inc.*, 294 Ill. App. 3d 34, 39 (1997). Accordingly, we reject Allstate's first argument.

Allstate next contends that the affirmative defense of the voluntary payment doctrine bars class certification. Under the voluntary payment doctrine, " 'money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal.' " *Wermers Floorcovering, Inc. v. Santanna Natural Gas Corp.*, 342 Ill. App. 3d 222, 224 (2003), quoting *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847 (1995).

Allstate points out that the record establishes that a large percentage of its customers were told by their agents that Allstate raised its COI rates due to changes in expenses that had nothing to do with the age, sex, or payment class of the insured and, therefore, because the customers paid "with knowledge" that this rate increase was in breach of the policy, the voluntary payment doctrine precludes recovery. Allstate asserts that class certification must be barred because each policyholder and each agent must be examined under oath to determine what was orally discussed and what was understood regarding the COI increase and, therefore, the need for individual hearings for all 450,000 policyholders, by itself, demonstrates that individual, not common, issues predominate.

We agree with plaintiffs that the voluntary payment doctrine does not apply in this case. First, there is no allegation that any policyholder made a payment to Allstate "under a claim of right" that the policyholder now claims "was illegal." To the contrary, there is no dispute that Allstate was entitled to collect premiums in the dollar amounts paid by the policyholders. Allstate did not increase premiums. It increased the COI rates, which left a smaller portion of premiums available to accumulate for policy cash value. There is no claim that Allstate's collection of premiums was illegal. Second, there is no claim to recover premiums paid to Allstate. Plaintiffs do not seek a refund of money paid to Allstate. Their damages are based upon diminution of policy cash value. Finally, as plaintiffs allege that Allstate intentionally misinformed its agents and policyholders that the COI increase was going to pay taxes, it cannot assert that its policyholders had "knowledge of the facts" regarding Allstate's actual goal of increasing profits. See *Getto v. City of Chicago*, 86 Ill. 2d 39, 49-50 (1981). Allstate's misrepresentations to its policyholders, implying that the monies from the COI increase were to be used to pay taxes rather than to increase profits, preclude the shield of the voluntary payment doctrine defense.

Allstate argues that some of its agents told their policyholders that the COI increase stemmed from an increase in Allstate's operational/business expenses. Again, Allstate ignores the substantial allegation in the class action complaint that sets out plaintiffs' primary theory: that Allstate cannot raise the COI rates to increase Allstate's profits. As stated above, Allstate does not claim that any agent told any policyholder that the rate increase was to increase profits. All that Allstate shows is that these agents disseminated "false information," which does not raise a serious factual basis for the application of the voluntary payment doctrine.

While Allstate has argued that it could lawfully increase the COI rates for the reasons disseminated by the agents, Allstate does not argue that it can increase the COI rates to increase profits. In fact, the record reveals that Allstate represented to various state insurance departments that the COI increase did not increase profits. Allstate does not claim that any policyholder was notified that the COI rate increase was motivated by and in fact did increase Allstate's profits, which is the primary thrust of the class action complaint and appears to be well-grounded in fact based on the record. Accordingly, we do not view this purported disclosure of "facts" to be sufficient to warrant application of the voluntary payment doctrine as Allstate argues, so as to raise the specter of multiple individual hearings and to bar class certification.

Allstate next contends that the 10-year statute of limitations defeats class certification because a determination must be applied on a case-by-case basis as to whether the statute has been tolled. Allstate claims that if the 10-year statute is not tolled, this action is barred, having been filed more than 10 years after implementation of the COI rate increase in April 1992.

The 10-year breach of contract limitations period applies to this action. See 735 ILCS 5/13—206 (West 2002). Allstate argues that a policyholder's claim will be barred if that individual had sufficient knowledge of his or her claim more than 10 years prior to filing the complaint. Allstate ignores its continuous duty to abide by the terms of its insurance policies. " '[B]ecause each breach of a continuous duty has its own accrual date, a plaintiff may sue on any breach which occurred within the limitation's period, even if earlier breaches occurred outside the limitation period.' " *C-B Realty & Trading Corp. v. Chicago & North Western Ry. Corp.*, 289 Ill. App. 3d 892, 897 (1997), quoting *Hi-Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1409 (7th Cir. 1993).

Moreover, Allstate acknowledges that the statute of limitations does not begin to run until the plaintiff becomes "possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." Under section 13—215 of the Code (735 ILCS 5/13—215 (West 2002)), Allstate's alleged intentional concealment of its breach allows the limitations period to commence at any time within five years after the person entitled to bring a claim discovers that he or she has such a cause of action. Plaintiffs' complaint alleges sufficient facts to trigger the application of the statute. No individual inquiry is required, as the complaint is based on an intentional concealment regarding the true reasons for the COI rate increase, and none of the policyholders were provided with the true reasons for the increase. The tolling of the limitations period is dependent only upon the trial court's factual and legal findings of the common questions regarding the propriety of Allstate's conduct. Accordingly, we reject Allstate's statute of limitations argument.

Allstate next contends that individual extrinsic evidence will be needed to determine the meaning of the COI provision in the insurance policies, which also would defeat class certification. The precise policy language at issue states: "Multiply the result by the current cost of insurance rate. The cost of insurance rate is based upon the insured's sex, attained age, and payment class. The rates will be determined by us, but they will never be more than the guaranteed rates described on Page 3." Allstate alleges that the extrinsic evidence

would show that the policy language permitted Allstate to increase the COI rates in response to changes in its underlying business expenses such as taxes. We find this argument tenuous at best.

Merely because the parties to the contract have different interpretations of policy language does not render the policy ambiguous. Generally, it is for the court in the first instance to determine as a matter of law whether the policy is ambiguous and to apply the appropriate rules of construction. *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 642 (1999). Parol evidence is not appropriate to interpret policy language that is facially unambiguous. *Benedict v. Federal Kemper Life Assurance Co.*, 325 Ill. App. 3d 820, 823-24 (2001). Any alleged oral promises made at the time of sale would violate the parol evidence rule and would be disregarded. *Benedict*, 325 Ill. App. 3d at 825-26.

Moreover, extrinsic evidence is admissible to explain the meaning of words in a contract only when there is an ambiguity or the words are susceptible of different interpretations. *Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 897 (2002). This well-recognized exception to the parol evidence rule does not apply to the instant case since there is no ambiguity to clarify or words to interpret. Allstate asserts that the COI rates may also depend on expenses, taxes, and profits. Plaintiffs would argue that, if Allstate wanted to include such items in calculating its COI rates, the policy language could have said so in a straightforward manner. However, a presumption exists "against provisions that easily could have been included in the contract but were not." *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 581 (1994). A contract does not become ambiguous just because the parties do not agree on its meaning. *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 876 (2001). It is clear that, contrary to Allstate's arguments, no party to this litigation claims that an ambiguity exists, as each party asserts that the policy language clearly and unambiguously mandates that party's desired result.

More importantly, we fail to see how the introduction of evidence of the individual discussions between policyholders and their agents, at the time of the individual sales, as to the intended meaning of the COI rates has any bearing on plaintiffs' allegations, because plaintiffs do not allege that Allstate or any Allstate agent misled them or any other policyholder at the time the policies were purchased. Thus, parol evidence would not be necessary. To the extent that extrinsic evidence would be necessary to explain and provide background information regarding the terms used in the policies and the functioning of universal life insurance, such evidence would apply across the board to all of the policies and, therefore, would not defeat class certification.

Allstate last contends that it was error to certify a nationwide breach of contract action because of the conflict among the varying legal standards of the 50 states and jurisdictions that govern the claims of the non-Illinois class members. Allstate points out that it submitted a 32-page "Legal Variation Appendix" detailing the major differences in the various elements and affirmative defenses that the jury would have to apply to the class members' claims depending on the particular state in which a class member resides. Allstate notes that the trial court dismissed this extensive document, stating that the court could subdivide a class into multiple subclasses, if necessary, to maintain the action. Allstate contends that, according to the supreme court in *Miner v. Gillette Co.*, 87 Ill. 2d 7, 17-18 (1981), when the laws of various states apply, the plaintiffs have the burden of establishing the number of subclasses necessary to accommodate the differences among the states' laws, and the trial court must find, through an issue-by-issue analysis of the states' laws, that the legal variations can be managed through proper and understandable jury instructions and a trial plan. Allstate contends that if this is not established, then class certification must be denied because a class action cannot be either appropriate or efficient where the jury can be neither instructed on nor expected to understand the correct legal standards to apply. We reject these arguments for the following reasons.

We agree with the trial court that there is a common question of fact in the case and that the substantive law of Illinois can be applied to resolve the factual issue common to the class. The Supreme Court has held that the substantive law of the forum state can be applied consistent with the requirements of due process where the forum state has " 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' *** ensur[ing] that the choice of [its] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2979 (1985), quoting *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 313, 66 L. Ed. 2d 521, 531, 101 S. Ct. 633, 640 (1981).

Here, it is apparent that Illinois substantive law can be applied to resolve the underlying common factual dispute. Each member of plaintiffs' class asserts the same breach with regard to the same nondisclosure of the same fact. This common allegation implicates the legitimate interests of the State of Illinois in ensuring that persons and entities within its jurisdiction, insofar as they undertake to act as agents, do so in accordance with its law. In this connection, we observe that Allstate's principal place of business is in Illinois and that Illinois has a legitimate interest in regulating its insurance industry. Addition-

ally, the standard-form policies were executed by Allstate, and the alleged wrongful conduct was devised and implemented by Allstate, in Illinois. As such, Illinois has a legitimate interest in adjudicating this dispute.

Further, Allstate does not raise substantial differences in applicable law from other jurisdictions. Allstate's "Legal Variation Appendix" focuses primarily upon insubstantial and hypothetical issues involving the voluntary payment doctrine and extrinsic evidence. Allstate discusses legal variations among the states regarding the "implied duty of good faith," apparently interpreting the class action complaint as setting forth a breach of contract theory based on an implied duty of good faith. However, few if any states would allow Allstate "the right to unilaterally and arbitrarily increase the COI rates to generate additional profits" as alleged in the complaint. Allstate does not argue that the law of any state or jurisdiction would allow it to increase the COI rates to generate additional profits. In fact, Allstate submitted to various state insurance regulatory bodies an "actuarial memorandum" certifying that the rate changes would not increase its profits. Moreover, Allstate does not claim that being held to the standards of Illinois law would cause Allstate to violate any law or regulation imposed by any other state or jurisdiction. Accordingly, we do not find that the trial court abused its discretion in applying Illinois law to certify the class action.

While this case was pending, the supreme court decided *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005). In that case, the plaintiffs filed a class action against State Farm arising out of the alleged installation of inferior automobile parts and alleging claims sounding in breach of contract and statutory consumer fraud. The supreme court reversed the certification of a nationwide contract class and the breach of contract verdict in favor of the plaintiffs. *Avery*, 216 Ill. 2d at 153. The court also reversed the judgments in favor of the plaintiffs on the consumer fraud counts because the plaintiffs failed to prove a private cause of action under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1998)). *Avery*, 216 Ill. 2d at 190, 203.

As to the breach of contract claim in *Avery*, there were two main policy forms, in addition to Massachusetts policies and assigned risk policies, that the supreme court first concluded could not be given uniform interpretations. *Avery*, 216 Ill. 2d at 134-35. Because the putative class included members who were insured under policies that the court concluded were materially different, the commonality and predominance requirements of section 2—801 could not be met. *Avery*, 216 Ill. 2d at 135. Accordingly, the class could not be certified

nationwide because there was no uniform automobile insurance policy and individual issues therefore would dominate the contract claim.

Regarding the statutory consumer fraud claim, the court found that the overwhelming majority of circumstances relating to the disputed transactions in the case—State Farm's claims practices— occurred outside Illinois for the out-of-state plaintiffs. Therefore, the court concluded that the trial court erred in certifying a nationwide class that included class members whose claims proceedings took place outside Illinois. *Avery*, 216 Ill. 2d at 187-90.

We distinguish *Avery* from the present case. *Avery*'s breach of contract claim involved multiple policy forms that differed materially and therefore rendered national class certification impossible. Here, however, there is no question that the policies are uniform nationwide. Moreover, unlike the plaintiffs in *Avery*, plaintiffs in the present case do not claim statutory consumer fraud. Further, in addition to other significant contacts, the alleged wrongful conduct in this case occurred at Allstate's headquarters in Illinois.

Because we find that Illinois law applies, we need not consider Allstate's argument regarding plaintiffs' proof and the trial court's issue-by-issue analysis of the states' laws and whether the conflict of laws can be managed through jury instructions and a trial plan. If, during a later stage of the litigation, a subclassification becomes apparent, the trial court has the option of simply dividing the class into subclasses. See *Gordon v. Boden*, 224 Ill. App. 3d 195, 202 (1991).

Based on the preceding, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

O'MALLEY, P.J., and McLAREN, J., concur.