No. 2--05--0979                                      filed 6/7/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

CHRISTOPHER D. WALCZAK and          )   Appeal from the Circuit Court of
JUDITH E. WALCZAK, on Behalf of     )   Lake County.
Themselves and All Others Similarly Situated,)
                                    )
     Plaintiffs-Appellees,          )
                                    )
v.                                  )   No. 03--CH--693
                                    )
ONYX ACCEPTANCE CORPORATION,        )   Honorable
                                    )   David M. Hall,
     Defendants-Appellants.         )   Judge, Presiding.

_____

_____

JUSTICE CALLUM delivered the opinion of the court:

I. INTRODUCTION

This court granted defendant's, Onyx Acceptance Corporation's, petition for leave to appeal under Supreme Court Rule 306(a)(8) (Official Reports Advance Sheet No. 26 (December 24, 2003), R. 306(a)(8), eff. January 1, 2004) from the trial court's order granting plaintiffs', Christopher D. and Judith E. Walczaks', motion for reconsideration and class certification. See 735 ILCS 5/2--801 (West 2002). On appeal, Onyx argues that the trial court abused its discretion in finding that the prerequisites for class certification were met. We affirm.

II. BACKGROUND

On April 30, 2003, plaintiffs sued Onyx in the form of a class action seeking equitable and monetary relief for breach of contract and violations of the Uniform Commercial Code (UCC) (810 ILCS 5/1--101 et seq. (West 2002)) and the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2002)). In their complaint, plaintiffs alleged that, on September 18, 2000, they entered into a retail installment contract with Rockenbach Chevrolet to purchase a used 1993 GMC Jimmy Typhoon motor vehicle for $17,990. Plaintiffs made a down payment in the amount of $4,500.60 and financed the remainder of the purchase price through Onyx. They agreed to make 60 monthly payments of $338.56, or a total of $20,313.60 (the $14,803.22 amount financed plus $5,510.38 in finance charges).

Onyx, a Delaware corporation with a Rosemont office, is an Illinois sales finance agency that purchases motor vehicle retail installment contracts. Plaintiffs alleged that they made monthly payments to Onyx under the terms of the contract for approximately nine months, for a total of $3,245.58. They then fell behind in their payments, and Onyx repossessed the vehicle on or about November 17, 2001.

Plaintiffs further alleged that, prior to the repossession, they paid an amount equal to 30% or more of the "deferred payment price" (815 ILCS 375/2.10 (West 2002)) under the contract or an amount equal to 30% or more of the total of payments due under the contract. Thus, under the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/1--100 et seq. (West 2002)), they could tender "all unpaid amounts," plus certain expenses and costs, "without acceleration." See 625 ILCS 5/3--114(f--7)(1) (West 2002). In plaintiffs' view, they could pay only the past-due monthly payments, plus allowable expenses, to redeem the motor vehicle and reinstate the contract.

Plaintiffs also alleged that the Vehicle Code requires a lienholder to send to the owner written notice of his or her motor vehicle redemption right. See 625 ILCS 5/3--114(f--7)(3) (West 2002). According to plaintiffs, on or about November 20, 2001, and after having repossessed the vehicle, Onyx issued them a written notice that described their rights to redeem their vehicle before it was sold. Onyx declared that the entire contract amount was immediately due and payable. Specifically, Onyx demanded a total of $14,435.82, representing $13,415.80 in unpaid balance, $420 in costs, $299.79 in interest, and $300.23 in late charges. Plaintiffs alleged that Onyx unlawfully accelerated the balance of the debt, gave faulty notice of plaintiffs' redemption right, and unlawfully sold their motor vehicle. According to plaintiffs, as of the repossession date, the unpaid amount due (without acceleration) was approximately $1,155.70. On March 21, 2002, Onyx sent plaintiffs a "Deficiency/Surplus Statement" notifying them of the sale of their vehicle for $500 and of a deficiency balance of $6,446.50. On March 18, 2003, Onyx sent plaintiffs a letter demanding full payment of a $6,146.50 deficiency balance.

In their complaint, plaintiffs asked the trial court to certify the action as a class action with both plaintiffs as representative parties. They alleged that the class consisted of: (1) plaintiffs and all other Illinois consumers; (2) who purchased motor vehicles in Illinois; (3) who financed such purchases through Onyx; (4) by entering into motor vehicle retail installment contracts; (5) which were then purchased by or assigned to Onyx; (6) who thereafter made payments to Onyx under the contracts, paying an amount equal to 30% or more of the deferred payment price under the contract or an amount equal to 30% or more of the total of payments due under the contract; (7) who fell behind in their payments to Onyx; (8) who had their motor vehicles repossessed for the first time by Onyx; (9) who then

received a notice letter from Onyx; (10) which misinformed them and/or failed to inform them of their rights to redeem their vehicles under the terms of the contract and the Vehicle Code (625 ILCS 5/3--114(f--5), (f--7) (West 2002)).

In its answer, Onyx, inter alia, denied that a class action was appropriate and asserted the defense of unclean hands. It further counterclaimed for conversion and breach of contract, alleging that plaintiffs failed to make monthly payments nine months after they entered into the contract and that they failed to keep the vehicle properly insured. Further, it alleged that plaintiffs intentionally stripped the vehicle of valuable parts, rendering it inoperable and, as a result, significantly diminished in value. Onyx further alleged that it subsequently repossessed the vehicle and sold it at auction, realizing $500 from the sale. It alleged that the balance due from plaintiffs was $14,435.82 as of November 20, 2001, and that it had demanded payment, but plaintiffs failed and refused to pay.

On July 25, 2003, plaintiffs moved for class certification. The trial court denied their motion on February 3, 2005, finding that only three of the four prerequisites for class certification were satisfied. Specifically, it found that the class was so numerous that joinder of all members was impracticable (735 ILCS 5/2--801(1) (West 2002)); that there were questions of law or fact common to the class that predominated over any questions affecting only individual members (735 ILCS 5/2--801(2) (West 2002)); and that plaintiffs as representative parties would fairly and adequately protect the interest of the class (735 ILCS 5/2--801(3) (West 2002)). However, it found that the class action was not an appropriate method for the fair and efficient adjudication of the controversy (735 ILCS 5/2--801(4) (West 2002)) because Onyx had threatened to bring counterclaims for deficiency

judgments against many members of the class if it were certified, because the threat was credible, and because it was quite possible that putative class members would have a judgment entered against them and that their liability would exceed their recovery. On March 3, 2005, plaintiffs moved for reconsideration of their motion for class certification. On August 30, 2005, the trial court granted plaintiffs' motion and certified the class. Addressing the fourth prerequisite for class certification, the court found that it is unlikely that Onyx may maintain any actions for deficiency judgments against any putative class members and further found that any counterclaims may be addressed on a class basis.

On February 26, 2004, the trial court dismissed both counts of Onyx's counterclaim. Onyx subsequently filed an amended counterclaim for conversion and a deficiency judgment. It also amended its affirmative defense, alleging that Christopher Walczak intentionally stripped the vehicle of many valuable parts. The trial court, on July 27, 2004, struck Onyx's amended affirmative defense and dismissed the conversion count as to both plaintiffs.

On September 29, 2005, Onyx petitioned for leave to appeal the trial court's August 30, 2005, order. On December 8, 2005, this court allowed Onyx's petition.

### III. ANALYSIS

### A. Motion Taken with Case

In a motion we ordered taken with the case, plaintiffs move to strike portions of Onyx's brief. For the following reasons, we deny plaintiffs' motion in its entirety.

First, plaintiffs address the scope of our review. They assert that Onyx never challenged the trial court's determination as to the first three elements required for class certification and request that we strike those portions of Onyx's brief that address those

elements, because they are not properly before this court. Plaintiffs point out that Onyx appealed only the August 30, 2005, order and not the court's February 3, 2005, order, which addressed the first three prerequisites for class certification. They reason that this court does not have jurisdiction over those issues.

Several considerations lead us to conclude that Onyx has not waived its arguments. The trial court's February 3, 2005, order denied class certification, thus deciding the issue in Onyx's favor and precluding an appeal by Onyx. See Solimini v. Thomas, 293 Ill. App. 3d 430, 434 (1997) (a party may not complain of error that does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment). Prior to this order, Onyx had argued that class certification was not appropriate. The trial court's articulated basis for its order was that, although the first three requirements for certification were satisfied, the fourth was not. In their motion to reconsider, plaintiffs addressed only the fourth element, and Onyx, in its response, did the same. Onyx subsequently appealed the only order that granted class certification in this case, i.e., the trial court's August 30, 2005, order. Rule 306(a)(8) states that appeals pursuant to that section are from orders "denying or granting certification of a class action." Official Reports Advance Sheet No. 26 (December 24, 2003), R. 306(a)(8), eff. January 1, 2004. The section contains no language otherwise limiting the scope of the appeal. Further, we note that an "unspecified judgment is reviewable if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal." Burtell v. First Charter Service Corp., 76 Ill. 2d 427, 435 (1979), quoting Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir. 1977); see also McGath v. Price, 342 Ill. App. 3d 19, 33 (2003).

Plaintiffs point to certain language in Onyx's memorandum opposing plaintiffs' motion to reconsider.  They argue that the following excerpt amounts to a concession by Onyx that the first three requirements for certification were met:

"Contrary to the facts of Steinberg and the cases cited by the plaintiffs as applying the purported 'Steinberg test,' the facts in this case which established the first three requirements for class certification did not serve to establish that the class action is the appropriate or fair method for adjudicating the underlying controversy.  On the contrary, there are countervailing facts which render the class action mechanism an inappropriate method for the fair adjudication of the plaintiffs' claims, regardless of the existence of the other three elements for class certification.\*\*\*  The fourth prerequisite for class certification has not been rendered meaningless by Steinberg and the Court was not required to hold that because the first three requirements for class certification were satisfied, the class action mechanism was necessarily 'appropriate' as required under the statute."  (Emphasis added.)

We do not agree with plaintiffs that the foregoing provision contains language clearly indicating that Onyx conceded below that the first three requirements were established.  Based on the foregoing considerations, we are reluctant to find Onyx's arguments addressing the additional elements waived and we deny plaintiffs' request to strike those portions of Onyx's brief.

Plaintiffs next address Onyx's statement of jurisdiction, arguing that it should be stricken because it does not contain a statement of the basis for the appeal or a statement of the relevant facts or dates.  See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(4)(ii), eff. October 1, 2001.  According to plaintiffs, the failure to include

the required information will hinder our review. We decline plaintiffs' request because the information that is missing from the statement of jurisdiction is located elsewhere in Onyx's brief.

Plaintiffs also take issue with Onyx's use of footnotes, which they contend are excessive and inappropriate and thus will hinder this court's review. Supreme Court Rule 341(a) limits an appellant's brief to 75 pages; it further prohibits the use of any devices to evade the page limitation and instructs that footnotes be used sparingly. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(a), eff. October 1, 2001. Rule 344(b) also provides that footnotes are discouraged. Official Reports Advance Sheet No. 22 (October 27, 2004), R. 344(b), eff. January 1, 2005. Plaintiffs contend that Onyx's footnotes are lengthy and substantive. Further, they assert that the footnotes contain argument, discussion, assertions of fact without reference or support, assertions of Onyx's allegations as fact, threats against plaintiffs to seek attorney fees, positions on issues, and characterizations. Plaintiffs also assert, without specification, that some of the footnotes appear to be an attempt to use material not in the record. Onyx's brief is 41 pages long and contains 18 single-spaced footnotes, 6 of which are in the statement of facts. Use of footnotes that contain argument and citation of authority is a serious violation of Rule 341(a). See In re Marriage of King, 208 Ill. 2d 332, 338 (2003). Here, however, we find that the footnotes generally contain relevant, supplementary information. Thus, upon review and mindful of the complexity of this case and the numerous issues presented, we conclude that sanctions are not necessary and deny plaintiffs' request to strike the footnotes.

Next, plaintiffs request that we strike or disregard certain portions of Onyx's statement of facts. They list 26 passages that they assert lack references to the record, are unsupported, are contradicted, or are inaccurate. We disagree with plaintiffs' assertions and find that Onyx's statement of facts sufficiently complies with Supreme Court Rule 341(e)(6) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(6), eff. October 1, 2001 (statement shall contain facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate references to the record)), and we note that even plaintiffs concede that certain citation omissions may be inadvertent. Accordingly, we deny plaintiffs' request to strike or disregard part of Onyx's statement of facts.

Plaintiffs next request that we strike portions of Onyx's appendix. Under Supreme Court Rule 342(a), an appellant's brief must include an appendix that contains "any pleadings or other materials from the record which are the basis of the appeal or pertinent to it." Official Reports Advance Sheet No. 22 (October 27, 2004), R. 342(a), eff. January 1, 2005. Generally, if the materials are not taken from the record, they may not be placed before a reviewing court by way of an appendix. Hubeny v. Chairse, 305 Ill. App. 3d 1038, 1042 (1999). First, plaintiffs contend that we should strike the copy of the August 30, 2005, order that Onyx has included in the appendix. They argue that there is no copy of this order in the record. We decline plaintiffs' request, as a copy of the order is in the record Onyx filed on September 29, 2005, to support its petition for leave to appeal to this court. The supporting record filed with the petition for leave to appeal constitutes part of the record on appeal. See Official Reports Advance Sheet No. 26 (December 24, 2003), R. 306(h), eff. January 1, 2004.

Next, plaintiffs assert that three federal district court opinions that Onyx has included in its appendix should be stricken. They note that none of the cases constitute material from the record, that only two of the cases are cited in Onyx's brief, and that the third case is not listed in Onyx's points and authorities section. Onyx responds that the cases were included as a courtesy to the court and argues that plaintiffs have not established how their inclusion hinders this court's review. We agree with Onyx that the cases' inclusion in the appendix will not hinder our review of this case, and we deny plaintiffs' request to strike the material.

Finally, plaintiffs argue that Onyx's statement of the case should be stricken because it is both lengthy and detailed and because it fails to provide certain required information. Also, plaintiffs assert that the statement is inaccurate and that the inaccuracies will hinder our review. Supreme Court Rule 341(e)(2) requires the inclusion of an "introductory paragraph stating (i) the nature of the action and of the judgment appealed from and whether the judgment is based upon the verdict of a jury, and (ii) whether any question is raised on the pleadings and, if so, the nature of the question." Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(2), eff. October 1, 2001. Onyx's statement of the case section consists of one 17-line paragraph. Upon review, we do not find Onyx's violations to be so serious as to warrant striking this section of its brief. See Neiman v. Economy Preferred Insurance Co., 357 Ill. App. 3d 786, 790 (2005) (reviewing courts may choose to waive strict compliance with Rule 341 upon their discretion).

### B. Class Certification

Turning to the merits of this appeal, Onyx challenges the trial court's findings as to the second through fourth prerequisites for class certification. To certify a class action, the

trial court must find (1) numerosity (the class is so numerous that joining all members is impracticable); (2) commonality (there are questions of fact or law common to the class, and the common questions predominate over any questions affecting only individual members); (3) adequacy of representation (the representative parties will fairly and adequately protect the interests of the class); and (4) appropriateness (the class action is an appropriate method for fairly and efficiently adjudicating the controversy). 735 ILCS 5/2--801 (West 2002); Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 125 (2005). "Whether to certify a class action is a matter within the sound discretion of the trial court, and we will reverse the trial court's decision only upon a showing that the court clearly abused its discretion or applied impermissible legal criteria." P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp., 345 Ill. App. 3d 992, 1002 (2004). Generally, the trial court should err in favor of maintaining class actions. Clark v. TAP Pharmaceutical Products, Inc., 343 Ill. App. 3d 538, 545 (2003).

### 1. Commonality

First, Onyx argues that the trial court abused its discretion in finding that the predominance prong of the commonality requirement for class certification was satisfied. Again, the commonality requirement requires a showing that: (1) there are questions of fact or law common to the class; and (2) the common questions predominate over any questions affecting only individual members.

Preliminarily, we note that Onyx does not address the first prong--the common questions presented here. We briefly review the questions, as did the trial court, to place the issues in the proper context. The instant action is predicated on a series of transactions during which Onyx is alleged to have acted wrongfully in the same basic

manner toward the entire class. In these transactions, Onyx purchased or was assigned retail installment contracts of Illinois customers who purchased automobiles from Illinois dealers and financed their purchases. The customers paid at least 30% of the deferred payment price of the vehicles and fell behind on their payments to Onyx. The vehicles were repossessed by Onyx for the first time. The customers allegedly were not sent and did not receive from Onyx a written notice of their right to redeem or recover their motor vehicles and reinstate their contracts by paying the past-due amount, without acceleration, plus repossession charges. The customers were sent and did receive from Onyx a letter demanding the full, accelerated balance of the contract as a condition for the redemption of their vehicles.

The common questions of fact or law in this case include: (1) whether Onyx violated the Vehicle Code and the contract by accelerating the debt and failing to notify plaintiffs and putative class members, who had paid an amount equal to 30% or more of the deferred payment price or total of payments due, of their right to redeem or recover their repossessed vehicles and to reinstate the contract by tendering all past-due amounts, plus certain expenses, without acceleration; (2) whether Onyx breached its contract with plaintiffs and class members when it sent a letter after repossession demanding payment of the full, accelerated balance and failed to send notice of the parties' redemption and recovery rights; (3) whether Onyx gave reasonable notification to plaintiffs and class members and acted in a commercially reasonable manner; (4) whether Onyx engaged in an unfair practice under the Consumer Fraud Act by failing to give plaintiffs and class members the rights granted by the Vehicle Code to redeem or recover their vehicles and reinstate their contracts; and (5) whether plaintiffs and class members were entitled to an

injunction restraining Onyx from collecting or attempting to collect the accelerated contract balances, based upon Onyx's acceleration of the contract balance without the opportunity for redemption or vehicle recovery, its demand for full payment and an accelerated balance, and its threat to file counterclaims seeking deficiency judgments.

We now turn to the predominance prong of the commonality requirement. As Onyx correctly notes, to satisfy the commonality requirement, it must be shown that " 'successful adjudication of the purported class representatives' individual claims will establish a right of recovery in other class members.' " Avery, 216 Ill. 2d at 128, citing Goetz v. Village of Hoffman Estates, 62 Ill. App. 3d 233, 236 (1978); see also Weiss v. Waterhouse Securities, Inc., 208 Ill. 2d 439, 452 (2004). Further, so long as questions of fact or law common to the class predominate over questions affecting only individual class members, the statutory requisite is met. Clark, 343 Ill. App. 3d at 548. A class action may be properly pursued where the defendant allegedly acted wrongfully in the same basic manner as to an entire class, and, in such circumstances, the common class questions predominate the case and the class action is not defeated. Clark, 343 Ill. App. 3d at 548.

Onyx argues that the trial court misinterpreted both the nature of plaintiffs' claims and the relief sought and that it misinterpreted the law governing predominance. It asserts that the trial court did not apply the successful adjudication test and that plaintiffs have not established and cannot establish that the successful adjudication of their individual claims will establish a common right of recovery for all class members. Onyx further argues that the parties disagree as to the proper test to determine commonality. Onyx asserts that plaintiffs characterize the proper test as follows: that they are required to demonstrate that the successful adjudication of their claims will (a) establish a common right of recovery for

all class members--the successful adjudication test--or (b) resolve a central issue. See P.J.'s Concrete, 345 Ill. App. 3d at 1003; see also Lee v. Allstate Life Insurance Co., 361 Ill. App. 3d 970, 975 (2005). While the trial court recited the test in the alternative proposed by plaintiffs, it clearly applied only the successful adjudication test in announcing its findings. Therefore, we do not address Onyx's argument at length.

Next, Onyx asserts that the trial court erred in finding that the successful adjudication of plaintiffs' claims would establish a right to recovery for all class members. Addressing plaintiffs' breach of contract claim, Onyx argues that plaintiffs' proof that they were ready, willing, and able to timely reinstate their contracts by paying all required amounts and curing all defaults will not establish that all other class members were similarly ready. Rather, each class member would have to make a similar evidentiary showing and Onyx would have a right to contest it. Turning to the causation and damages elements in each of plaintiffs' claims, Onyx contends that all class members would be required to show that, but for Onyx's alleged breach, they would have exercised their rights under the contract and reinstated it by paying the total of all unpaid amounts, Onyx's costs of repossession, and all other defaults under the agreement. In other words, to show causation, all class members would have to prove that, but for Onyx's alleged failure to provide required statutory notice, they would have timely exercised their alleged rights to reinstate their retail installment contracts by paying all required amounts and curing all defects, and would have recovered their vehicles. According to Onyx, such a showing cannot be made on a class-wide basis because proof that plaintiffs were ready to reinstate their contract and recover their vehicle will not establish that all other class members were similarly ready. Thus, the causation element of plaintiffs' claims will not be established and,

as a consequence, neither will a common right of recovery for all class members. Moreover, Onyx asserts that the right to recover for an alleged breach of contract or alleged violations of the UCC and Consumer Fraud Act requires a showing of both a breach or violation and actual damages proximately caused by the alleged breach or violation. Thus, Onyx argues that plaintiffs cannot merely assert contractual and statutory violations and maintain that the unlawful conduct itself provides them and the class members the right to recover. Rather, each asserted cause of action requires a showing of actual damages caused by Onyx's offending conduct.

Plaintiffs respond that Onyx misapprehends the nature of the injury it has caused. According to plaintiffs, all class members had the contractual and statutory right to a 21-day opportunity to cure their contract default. Class members were injured when they were deprived of that opportunity by Onyx's acceleration, failure to give statutory notice, giving of misleading notice, and selling of the vehicle without opportunity to cure. Plaintiffs argue that Onyx misapplies the concept of proximate cause to their breach of contract and statutory violation claims. They assert that the injury here was the deprivation of the right to cure and that the damage was the loss of the vehicle and loss of the contract. They further assert that the aforementioned injury was inflicted upon all class members and that they were all damaged in the same manner. Plaintiffs also take issue with Onyx's assertion that class members must show that they were financially able to exercise their right to cure. Plaintiffs contend that no such showing of causation is required because the ability and willingness of class members to exercise their right to cure is not related to the opportunity to cure. Further, they point out that the opportunity to cure is a 21-day opportunity and is not determined at the time of repossession. Finally, plaintiffs argue that Onyx's theory is

not one of causation but is a theory of defense. They contend that whether individual financial ability could be a defense is not appropriate for determination on a motion for class certification. Its relevance, if any, is as a measurement of actual loss and damages; specifically, as a setoff of the past-due amount against any recoverable damages.[1]

---

[1]The basic theory of damages for breach of contract requires that a claimant "establish an <u>actual loss or measurable damages resulting from the breach</u> in order to recover." (Emphasis added.) <u>Avery</u>, 216 Ill. 2d at 149. To establish a violation of the Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) <u>actual damage to the plaintiff</u>; (5) <u>proximately caused by the deception</u>. <u>Pappas v. Pella Corp.</u>, 363 Ill. App. 3d 795, 798-99, 844 N.E. 2D 995, 997 (2006). UCC section 9--625(b) provides, in relevant part, that "a person is liable for damages in the amount of any loss <u>caused</u> by a failure to

Addressing causation, the trial court found that plaintiffs need prove only that Onyx failed to provide the required notice, not that they were able to redeem their vehicle and reinstate the contract. It noted that the law does not require that notice be provided only when the defaulting party can show that he or she was able to pay. See 625 ILCS 5/3--114(f--7)(3) (West 2002). The court found that the defaulting party must be given proper notice and opportunity to redeem his or her loan before the vehicle is sold. In the court's view, Onyx's alleged failure to do so constitutes the injury and that injury is common to the class.

We find Onyx's arguments unconvincing and conclude that the trial court here reasonably found that there were common questions of law or fact and that these questions predominate over any questions affecting only individual members. A class action is not defeated solely because of some factual variations among class members' grievances. See Clark, 343 Ill. App. 3d at 548. That some members are not entitled to relief because of some particular factor will not bar the class action. Steinberg v. Chicago Medical School, 69 Ill. 2d 320, 338 (1977); see also Wenthold v. AT&T Technologies, Inc., 142 Ill. App. 3d 612, 618 (1986). After the litigation of common questions, questions that are peculiar to individual class members may be determined in ancillary proceedings. Clark, 343 Ill. App. 3d at 548. Commonality is not destroyed even where class members may be differently

_____

comply with this Article." (Emphasis added.) 810 ILCS 5/9--625(b) (West 2002).

affected by the applicability of the statute of limitations, the doctrines of <u>laches</u>, good-faith and unclean hands, exhaustion of contract, or other remedies. See <u>Eshaghi v. Hanley Dawson Cadillac Co.</u>, 214 Ill. App. 3d 995, 1003 (1991). Common questions may also predominate where some claims might be barred by <u>res</u> <u>judicata</u>. <u>Eshaghi</u>, 214 Ill. App. 3d at 1003; <u>cf.</u> <u>Key v. Jewel Cos.</u>, 176 Ill. App. 3d 91, 98 (1988) (individual determinations of proximate cause predominated over common questions where matter involved claims concerning various documents and oral representations, as well as different financial and operating expenses of numerous franchisees); <u>Goetz</u>, 62 Ill. App. 3d at 236-38 (common questions did not predominate where case involved separate transactions that were not identical and would require proof of the defendants' negligence or misconduct in selecting, installing, and inspecting the wiring in each class member's home).

It was not unreasonable for the trial court to find that the injury Onyx allegedly inflicted, which is common to the class, is the deprivation of the right to cure their defaults, recover their vehicles, and reinstate their contracts and that Onyx's conduct (<u>i.e.</u>, acceleration, failure to provide proper notice, and sale of vehicles without allowing the opportunity to cure) caused such injuries. Onyx's arguments concerning the financial ability of class members to reinstate their contracts bears not upon causation, but, rather, constitutes a defense; specifically, as a measure of each class member's actual loss. Thus, whether individual members were ready, willing, and able to exercise their right to cure and reinstate their contracts will ultimately come into play as a setoff against any recoverable damages. See <u>Haynes v. Logan Furniture Mart, Inc.</u>, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) (addressing appropriateness of a class action under Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23) in a suit brought under a federal consumer

credit protection statute and noting that successful counterclaims would only reduce damage awards and not affect liability finding).

We further disagree with Onyx's contention that the trial court erred in finding that the predominance requirement was met because individual issues will arise in determining whether class members sustained actual damages pursuant to Onyx's allegedly unlawful conduct.  "Individual questions of injury and damages do not defeat class certification." Clark, 343 Ill. App. 3d at 549.

2. Adequacy of Representation

Turning to the adequacy of representation requirement, Onyx argues that the trial court erred in finding that this requirement was met.  It contends that the fact that it can and will pursue deficiency judgments against the putative class members demonstrates that plaintiffs are inadequate class representatives because their pursuit of class claims will expose absent class members to deficiency claims and potential judgments.  According to Onyx, plaintiffs' interest in pursuing their claims on behalf of a class conflicts directly with the interests of class members who do not wish to be exposed to litigation or deficiency judgments as a direct result of plaintiffs' actions.

"The purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." P.J.'s Concrete, 345 Ill. App. 3d at 1004.  "The test to determine the adequacy of representation is whether the interests of those who are parties are the same as those who are not joined." P.J.'s Concrete, 345 Ill. App. 3d at 1004.  Also, the named plaintiff's interest must not appear collusive. Miner v. Gillette Co., 87 Ill. 2d 7, 14 (1981).  Additional factors courts consider include the extent to which the class's interests

and those of existing parties converge or diverge, the commonality of legal and factual positions, the practical abilities of existing parties in terms of resources and expertise, and the vigor with which existing parties represent the class's interests. City of Chicago v. John Hancock Mutual Life Insurance Co., 127 Ill. App. 3d 140, 145 (1984).

We conclude that the trial court did not abuse its discretion in finding that plaintiffs would adequately represent the class. Assuming that Onyx may pursue deficiency judgments, its argument that class litigation will expose members to such judgments as a direct result of plaintiffs' actions is partly belied by the fact that class members are liable for deficiency judgments due to their contract defaults and not primarily because of plaintiffs' actions. Plaintiffs' claims are not antagonistic to the class, because plaintiffs are in the same position as all putative class members--they defaulted on their contracts. Moreover, we note that, generally, individual counterclaims or defenses do not render a case unsuitable for class action. See Haynes, 503 F.2d at 1165 n.4 (successful counterclaims will only reduce damage awards and not affect liability finding); see also P.J.'s Concrete, 345 Ill. App. 3d at 1004 (presence of individual defenses will not interfere with plaintiff's ability to adequately represent class); Purcell & Wardrope Chartered v. Hertz Corp., 175 Ill. App. 3d 1069, 1078 (1988) (defendant's individual defenses and its filing of a counterclaim against class representative not sufficient to defeat class certification on the basis that the class representative is not adequate). The fact that Onyx has threatened to pursue such claims against only individuals who join in the class action does not convince us that the trial court's finding was unreasonable, as class members have the right to opt out of a class action suit. See 735 ILCS 5/2--804 (West 2002) (addressing exclusion of class members).

3. Appropriateness

Onyx's final argument addresses the fourth requirement for class certification--that the class action is an appropriate method for fairly and efficiently adjudicating the controversy. In deciding whether the fourth requirement for class certification is met, a court considers whether a class action can best secure economies of time, effort, and expense or accomplish the other ends of equity and justice that class actions seek to obtain. P.J.'s Concrete, 345 Ill. App. 3d at 1004. Where the first three requirements for class certification have been satisfied, the fourth requirement may be considered fulfilled as well. P.J.'s Concrete, 345 Ill. App. 3d at 1004; see also Steinberg, 69 Ill. 2d at 339; Clark, 343 Ill. App. 3d at 552. Also, class actions are often the last barricade of consumer protection. Clark, 343 Ill. App. 3d at 552. Consumer class actions provide restitution to the injured and deterrence to the wrongdoer, thus attaining the ends of equity and justice. Clark, 343 Ill. App. 3d at 552.

Onyx argues that the trial court erred in finding, upon reconsideration, that the appropriateness requirement was met. According to Onyx, the court incorrectly interpreted Illinois law regarding whether a creditor may maintain an action for a deficiency judgment against a debtor where the creditor has failed to provide proper statutory notice in connection with the disposition of collateral. Asserting that it is not barred from pursuing deficiency judgments against absent class members, Onyx contends that the court abused its discretion in determining that the class action would allow for the fair and efficient adjudication of the underlying claims.

In its February 3, 2005, ruling the trial court expressed concern about the possibility that Onyx may bring counterclaims against the class members for deficiency judgments and, thus, found that class certification could not be viewed as accomplishing the ends of

equity and justice since class members would be subjected to increased liability as a result of the suit. The court denied certification, finding that putative class members would likely have little or nothing to gain, and potentially much to lose, from class membership. Upon reconsideration, the trial court reversed its earlier ruling and certified the class. Relying on First National Bank of Decatur v. Wolfe, 137 Ill. App. 3d 929 (1985), the court determined that it is "unlikely" that Onyx may pursue deficiency judgments against class members and found that, nevertheless, any potential counterclaims may be addressed on a class-wide basis. Accordingly, it found that the fourth requirement for class certification was met and it certified the class.[2]

---

[2]Wolfe instructs that a creditor bears the burden of proving compliance with the notice requirements of section 9--504(3) of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 9--504(3) (now 810 ILCS 5/9--611(b) (West 2002))) (addressing notice of disposition of collateral) before recovering a deficiency judgment. Wolfe, 137 Ill. App. 3d at 932. The failure to provide adequate notice, however, does not necessarily bar a deficiency judgment; rather, it puts an additional burden on the creditor to rebut a presumption that the secured collateral is worth at least the amount of the debt and to prove that the amount actually collected at the sale of the collateral was commercially reasonable. Wolfe, 137 Ill. App. 3d at 932; see also General Foods Corp. v. Hall, 39 Ill. App. 3d 147, 153 (1976). In the UCC context, our supreme court has observed that none of the statute's provisions provide that a lack of notice bars a deficiency judgment. First Galesburg National Bank & Trust Co. v. Joannides, 103 Ill. 2d 294, 299 (1984). The court has rejected an absolute-bar view, under which a secured creditor is precluded from bringing a deficiency action against the debtor unless the debtor was given notice of the proposed sale of collateral. First

Galesburg, 103 Ill. 2d at 299-301.  In the court's view, the absolute-bar rule, by barring a

deficiency action regardless of whether the debtor has suffered damage from the lack of

notice, provides a windfall to the debtor and arbitrarily penalizes the creditor.  First

Galesburg, 103 Ill. 2d at 300.  First Galesburg, however, did not involve a notice of a right

to cure under the Vehicle Code.

Onyx notes that plaintiffs and the putative class members all defaulted on their underlying retail installment contracts and that plaintiffs have alleged a claim for damages pursuant to Onyx's failure to provide sufficient notice of their reinstatement right under the Vehicle Code. According to Onyx, it intends to respond to any claims asserted against it on behalf of the absent class members by initiating its own claims to recover deficiency balances owed on each member's underlying contract. Onyx argues that a defaulting debtor should not be permitted to avoid liability on the underlying contract and seek damages on the basis of the creditor's alleged breach of any notice requirement. Onyx contends that any bar to its pursuit of deficiency judgments against the defaulting debtors would allow the debtors an impermissible windfall.

Our inquiry here is limited to determining whether the trial court abused its discretion in certifying the class. We are not presented with, and do not decide, the question whether Onyx may bring deficiency claims against the class members. Indeed, the trial court did not decide this issue, but was swayed by the fact that, according to its interpretation of the law, it is "unlikely" that Onyx may bring such actions and that, if it may, they likely may be dealt with on a class-wide basis. Assuming that Onyx's deficiency claims are not barred, we noted above that the mere threat or even the filing of such claims does not defeat certification. See, e.g., Hertz, 175 Ill. App. 3d at 1078. Further, we have also pointed out that class members have the right to opt out of a class action. See 735 ILCS 5/2--804 (West 2002). In addition, we observe that the first requirement for class certification-- numerosity--is not at issue in this case and we have upheld the trial court's findings addressing the second and third requirements. Therefore, we may consider the fourth requirement fulfilled. P.J.'s Concrete, 345 Ill. App. 3d at 1004. Accordingly, we conclude

that the trial court did not abuse its discretion in finding that the appropriateness requirement was met.

IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BYRNE, JJ., concur.