2007 UT App 244

**Ann V. MAAK, an individual, on behalf of herself and others similarly situated, Plaintiff and Appellant,**

v.

**IHC HEALTH SERVICES, INC., a Utah corporation; and John Does 1–20, Defendants, Third-party Plaintiffs, and Appellees,**

v.

**Regence Blue Cross Blue Shield of Utah, a Utah corporation; Healthwise, a Utah corporation; and John Does 21–40, Third-party Defendants.**

**No. 20060124–CA.**

Court of Appeals of Utah.

July 12, 2007.

Rehearing Denied Aug. 24, 2007.

---

James L. Ahlstrom and Terry E. Welch, Salt Lake City, for Appellant.

Steven C. Bednar, Tyson B. Snow, Timothy C. Houpt, and Marci B. Rechtenbach, Salt Lake City, for Appellees.

Before Judges BENCH, GREENWOOD, and DAVIS.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Plaintiff Ann V. Maak appeals the trial court's grant of summary judgment in favor of Defendant IHC Health Services, Inc. We affirm in part, and reverse and remand in part.

## BACKGROUND

¶ 2 Maak received emergency medical care at LDS Hospital, owned by IHC Health Services, Inc. (IHC), from April 2 to April 5, 2002. When Maak arrived at the hospital, her husband signed, on her behalf, a form titled Consent and Conditions of Admission (the IHC contract). After her treatment, Maak received a statement from LDS Hospital that itemized the services she had received and the charges for each service. Utah Code section 26–21–20 requires hospitals to send this statement of itemized charges to patients. *See* Utah Code Ann. § 26–21–20 (2000). The total charges for Maak's medical care at LDS Hospital were $11,396.11.

¶ 3 At the time Maak was treated at LDS Hospital, she and her husband were insured through Regence Blue Cross Blue Shield (Regence). Regence contracts with participating health care providers, such as LDS Hospital, to provide health services to its insureds. Pursuant to a contract between IHC and Regence, all medical procedures performed at LDS Hospital are classified in a Diagnostic Related Group (DRG), which Regence agrees to reimburse, at a predetermined fixed rate, without regard to the actual costs LDS Hospital incurs for the services. In Maak's case, this meant that although LDS Hospital's charges for services rendered to Maak were $11,396.11, Regence reimbursed IHC $12,310.36. That reimbursement was determined by the applicable DRG. As a result, IHC received $914.25 more from Regence than it actually charged for the services rendered. IHC asserts that in the vast majority of cases, the DRG reimbursement amount is less than the actual charges, and that only in a minority of cases, including Maak's, is the reimbursement amount greater than the itemized charges. According to IHC, the DRG reimbursement amount is calculated to approximate average total costs for each medical procedure.

¶ 4 In addition to the $12,310.36 that IHC collected from Regence, IHC billed Maak $986.63. This bill was based on Maak's twenty percent coinsurance obligation under her Regence plan.[1] Maak disputed the IHC bill, arguing that IHC already had been more than fully compensated by Regence for the hospital charges incurred on her behalf.

---

1. Because Maak's coinsurance obligation was capped annually, and she had previously applied a coinsurance payment, the amount she is appealing is less than twenty percent of the hospital bill.

Maak did not dispute the DRG reimbursement approach as used between IHC and Regence, but protested IHC's ability to bill her for additional monies after LDS Hospital's entire bill had been satisfied by her insurance company. After paying the bill under protest, Maak sued IHC, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Utah Insurance Fraud Act, common law fraud and misrepresentation, and deceptive trade practices. She also sought punitive damages and class action status. IHC filed a third party claim against Regence.

¶ 5 IHC filed a motion for summary judgment on all of Maak's claims, which the trial court granted. The trial court's minute entry stated, "While it is surely unusual for [LDS] hospital to be seeking payment above and beyond the amount that it billed, it is entitled to bill for the co-insurance amounts for which the plaintiff is responsible, even where that will result in an excess payment to the hospital." Further, the trial court advised that any problems Maak had with her coinsurance requirement should be addressed to her insurance carrier, Regence, and not IHC. Maak appeals.[2]

## ISSUE AND STANDARDS OF REVIEW

■■ ¶ 6 Maak argues that the trial court erred by granting summary judgment in favor of IHC. "In the context of a summary judgment motion, we … employ a correctness standard and 'view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party.'" *R.A. McKell Excavating, Inc. v. Wells Fargo Bank*, 2004 UT 48, ¶ 7, 100 P.3d 1159 (quoting *Hermansen v. Tasulis*, 2002 UT 52, ¶ 10, 48 P.3d 235). "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Id.* "[Q]uestions of contract interpretation not requiring resort to extrinsic evidence are matters of law, which we review for correctness." *Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.*, 2004 UT 54, ¶ 6, 94 P.3d 292 (quotations omitted).

2. Regence is not a party to this appeal.

## ANALYSIS

### I. Breach of Contract

■■ ¶ 7 Maak argues that the trial court improperly granted summary judgment because the trial court erred in determining that Maak was bound by IHC's billing procedures by virtue of the contracts she signed with IHC and Regence. "[U]nless the language of an insurance contract is ambiguous or unclear, the court must construe it according to its plain and ordinary meaning." *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 836 (Utah 1998). "A contract is ambiguous if it is unclear, omits terms, has multiple meanings, or is not plain to a person of ordinary intelligence and understanding. Ambiguities are construed against the drafter-the insurance company." *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 6, 980 P.2d 685 (citations omitted).

¶ 8 With this in mind, we consider the contract language of the three contracts at issue here: (1) Maak's contract with IHC, signed by her husband when she entered LDS Hospital; (2) the insurance contract between Maak and Regence; and (3) the contract between IHC and Regence.

### A. Maak's Contract with IHC

■ ¶ 9 Maak's contract with IHC, signed as part of her admission process to LDS Hospital, states, inter alia:

Patient and the undersigned, if other than the Patient, each jointly and severally *agree to pay for all the health care services rendered to Patient in the Facility* including but not limited to any amounts not paid by any insurance company or other third party payor. Patient and the undersigned, if other than the Patient, *remains responsible for all co-payments, deductibles, co-insurance, and/or non-covered services regardless of amount paid by insurance or third party payor.*

(Emphasis added.)

¶ 10 Maak argues that her agreement to pay for "all the health care services ren-

dered" obligates her to pay for the services she received, as established by the hospital's statement of charges. She claims that when IHC received full payment, from any source, of the cost of her medical services, Maak had no further financial obligation to IHC under the IHC contract. Maak's claim relies in part on the Utah statute requiring hospitals to disclose to patients a comprehensive list of itemized charges incurred during each hospital stay. *See* Utah Code Ann. § 26–21–20.[3] This statute requires that hospitals "shall itemize each of the charges actually provided by the hospital to the patient." *Id.* § 26–21–20(3). Further, the statute states: "A statement of charges to be paid by a third party and related information provided to a patient pursuant to this section shall be marked in bold: 'DUPLICATE: DO NOT PAY' or other appropriate language." *Id.* § 26–21–20(6).

¶ 11 Maak claims that the statute aims to require hospitals to inform patients such as herself of the maximum amount the hospital is entitled to receive for "services rendered." Maak further contends that it would create an absurd result to require hospitals to provide an itemized list of charges to patients, but then allow hospitals to avoid adhering to the amount in those itemized statements by contracting around the rates in undisclosed negotiations with insurers.

¶ 12 Maak further argues that the clause in her contract with IHC requiring patients to pay coinsurance "regardless of amount paid by insurance" means she is required to pay coinsurance only up to the hospital's total bill, regardless of the amount reimbursed by her insurance carrier. In other words, Maak contends that IHC is entitled to receive $11,396.11 from some payor, whether it be from her, the insurance company, a third party, or some combination thereof. The fact that her insurance company satisfied her obligation to pay for "all the health care services rendered" obliterated any further obligation by her to IHC. Reading the IHC contract together with Utah Code section 26–21–20 makes it clear, she argues, that IHC is entitled to receive $11,396.11 through some combination of insurance and patient payments.

¶ 13 In contrast, IHC argues that the language "regardless of amount paid by insurance" means that no matter how much the insurer pays, the patient is nevertheless obligated to pay the coinsurance amount as determined by her insurance plan with Regence. However, Maak's contract with IHC does not define Maak's coinsurance obligation, nor does it specifically refer to its own contract with Regence or to Maak's insurance plan.

¶ 14 We agree with Maak that the IHC contract language is ambiguous because of the conflict between its provisions. On one hand, Maak is required to pay for "all the health care services rendered," reasonably meaning only the amount LDS Hospital charged for its services. On the other hand, Maak is required to pay coinsurance, unspecified in the IHC contract and with no explicit agreement to pay more than the total charges incurred by IHC. Because precedent dictates that "ambiguities are construed against the drafter," *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 6, 980 P.2d 685, we conclude that the IHC contract, by itself, does not obligate Maak to pay IHC more than the actual charges incurred.

**B. Maak's Contract with Regence**

██ ¶ 15 IHC claims that Maak's contract with Regence also required her to pay the coinsurance amount to IHC. Maak's health insurance policy with Regence states:

> [Regence] will pay the Participating Provider directly for Covered Services.... Participating Hospitals, Participating Skilled Nursing Facilities, and other facilities that are Participating Providers have agreed to accept [Regence's] payment in accordance with contractual payment schedules. *Contractual payment schedules can be greater than or less than the facility's actual charges for Covered Services. The Member's obligation for payment to a Participating Provider is the Deductible and/or Copayment and the Co-*

---

**3.** This requirement does not apply to patients qualifying for title XIX of the Social Security Act.

*See* Utah Code Ann. § 26–21–20(5).

*insurance as applied to charges for Covered Services in excess of Deductible and/or Copayment.*

(Emphasis added.) Another section of Maak's health plan states that the "Member pays only Deductible and Coinsurance for Covered Services." In addition, "After Deductible, [Regence] pays 80% and Member pays 20% of Eligible Medical Expenses."

¶ 16 Coinsurance is defined in the contract as "an amount, expressed as a percentage, that the Member must pay for Covered Services." Covered services are defined as "the services, supplies, or accommodations listed below in Part III for which [Regence] makes payments." In Part III, there are four pages of covered services, including items such as hospital accommodations, surgical services, and transplants. The contract does not mention DRGs but refers only to contractual payment schedules between Regence and health care providers. Like the IHC contract, the relationship between Maak's payment obligation and the contractual payment schedule is not clear. While the contractual payment schedule can be greater or less than actual hospital charges, the contract does not address the impact, if any, on the patient's payment of coinsurance.

¶ 17 Maak's argument about the Regence contract is similar to the one she made regarding the IHC contract. Maak contends that her payment obligation "as applied to charges for covered services" is based on IHC's actual charges for covered services, not on contractual schedules negotiated between IHC and Regence to which she was not a party. Maak does not contest the ability of IHC and Regence to set reimbursement schedules between themselves. What she does contest, however, is the ability of IHC and Regence to determine and collect her coinsurance payment obligation through contracts to which she was not a party.

¶ 18 IHC argues that pursuant to the Regence contract, Maak agreed to an allocation of health care costs, split between Maak and Regence, according to Regence's arrangement with Maak's health care providers. IHC further states that the hospital's billing for actual services is relevant only for those who pay the entire bill themselves. In those

instances, there is no application of DRG schedules and the maximum patient payment is the actual charge. However, for those insured under the Regence plan, the contract discloses that Regence may pay more or less than the actual costs of service, pursuant to agreements with the insured's health care providers. IHC also asserts that the Regence contract further requires the insured to pay the coinsurance amount notwithstanding the possibility that the health care provider has already been fully reimbursed by Regence.

¶ 19 We conclude that the coinsurance liability is based on the "charges for covered services." In this instance, the coinsurance was calculated based on IHC's actual charges, not the higher DRG reimbursement amount. Therefore, Maak was not overcharged on that basis. The remaining question is whether IHC could bill and collect the coinsurance amount from Maak.

¶ 20 IHC asserts that Maak should have sued Regence, not IHC, because Regence determined Maak's coinsurance obligation. IHC emphasizes that Maak's coinsurance obligation is established in the Regence contract. This is corroborated, in part, because Regence sent Maak a statement indicating that her twenty percent coinsurance amount was based on the lesser amount of LDS Hospital's itemized costs, not the higher DRG reimbursement amount. Therefore, IHC claims that it cannot be held responsible for pursuing collection efforts.

¶ 21 This argument is not persuasive. Nothing in the Regence contract obligates IHC to pursue collection efforts against Maak after IHC has been fully compensated for its hospital bill. We agree with Maak that "IHC has not, and cannot, show evidence from the Record that it would be in breach of contract with Regence by failing to collect the amounts it sought to collect, and ultimately did forcibly collect, from Maak." IHC conceded this point in oral argument. The claim that Maak sued the wrong party is similarly unavailing. IHC, not Regence, billed Maak and threatened collection efforts based on her hospital bill. Maak eventually paid IHC, not Regence, and IHC received

the benefit of the payment. Therefore IHC is the correct party in this lawsuit.

## C. IHC's Contract with Regence

¶ 22 The contract between IHC and Regence, as relevant to this case, establishes the method by which Regence provides insurance reimbursement for its insureds who receive medical services from IHC. As stated earlier, the contract refers to DRG schedules, setting reimbursements for specified medical procedures. The Regence–IHC contract is subject to a protective order pursuant to a confidentiality agreement among the parties.

## D. Discussion

¶ 23 IHC claims that the payment arrangement it established with Regence, which utilizes DRGs, should be ratified in this case because it conforms to what has become a national standard in the healthcare system. For example, federal legislation governing Medicare mandates a "Prospective Payment System" to encourage an efficient use of resources and cost maintenance. *See Sisters of Charity Hosp. v. Riley,* 231 A.D.2d 272, 661 N.Y.S.2d 352, 355 (1997). In conformance with Medicare,

> every medical diagnosis is categorized in a "diagnostic related group" (DRG) established by the Secretary of Health and Human Services (Secretary). The Secretary also has established a fixed reimbursement rate for each DRG based upon the average length of stay of patients with that DRG ... irrespective of the actual length of the hospital stay or its cost.

*Id.*

¶ 24 Under Medicare's DRG reimbursement approach, if a hospital's actual costs are higher than the reimbursement rate, the hospital absorbs the excess cost. *See id.* at 355. However, if the hospital's actual costs are less than the DRG amount, the hospital retains the Medicare overpayment. *See id.*

¶ 25 In Utah, the DRG reimbursement approach has been legislatively authorized explicitly in the context of state administration

of Medicaid. *See* Utah Admin. Code R414–2A–9(1).

DRG weights are established to recognize the relative amount of resources consumed to treat a particular type of patient. The DRG classification scheme assigns each hospital patient to one of over 500 categories or DRGs based on the patient's diagnosis, age and sex, surgical procedures performed, complicating conditions, and discharge status.... A preset reimbursement is assigned to each DRG.

*Id.; see also* Utah Code Ann. § 26–18–3 (1998).[4]

¶ 26 Although no Utah cases discuss DRGs, a New Jersey court addressed a situation with similar facts; however, that case provides only minimal guidance because of the court's reliance on state legislation in reaching its decision. In *Russell v. Rutgers Casualty Insurance Co.,* 234 N.J.Super. 175, 560 A.2d 708 (1989), a hospital's actual charges for the plaintiff's medical services amounted to almost $2000, while the applicable DRG was about $5500. *See id.* at 709. The insurance company paid the plaintiff's actual charges, not the DRG amount, arguing that the term "hospital expenses" in the controlling legislation meant the actual cost of the services, not the DRG amount. *Id.* The court disagreed, stating that the insurance company's argument "cannot withstand scrutiny in the face of the legislative enactments and the administrative regulations." *Id.* at 710. Notably, New Jersey had enacted comprehensive health care legislation, The Health Care Facilities Planning Act, and other administrative rules pertaining to DRGs. *See id.* at 709. The court ruled that this legislation was determinative. *See id.* There is no claim by IHC that Utah has enacted any legislation affecting the resolution of the issues in this case.

¶ 27 It is undisputed that the IHC–Regence contract incorporates DRG schedules; however, neither the IHC–Regence contract nor the DRG schedules were provided to Maak when she signed her contracts with Regence and IHC, and they were not

---

4. IHC states that Utah Children's Health Insurance Act also incorporates similar cost-sharing methods. *See* Utah Code Ann. §§ 26–40–102 to –110 (Supp.2006).

specifically referred to or incorporated by reference in those contracts.

¶ 28 We determine that the contract between IHC and Maak is ambiguous and therefore cannot provide a basis for IHC to collect coinsurance from Maak that will result in it receiving more than the actual costs of "the health care services rendered." The contract between Regence and Maak requires Maak to pay her coinsurance amount notwithstanding the possibility that Regence has fully reimbursed IHC for services rendered. This contract refers to "contractual payment schedules" agreed to by Regence and "Participating Providers" but does not incorporate those schedules nor describe how those schedules are determined. This contract also does not purport to authorize a health provider or anyone other than Regence to enforce payment of the coinsurance. Of course, when a health provider has not been fully paid for its services, it can collect the difference from a patient pursuant to its contract with the patient. However, absent such a shortfall, the contract between Regence and Maak does not provide IHC a basis to collect from Maak a sum in excess of that already received on her behalf from Regence. IHC's arguments rely on linking the two contracts in which Maak was a party. The problem is that IHC cannot use Regence's contract with Maak to create a right to collect under its contract with Maak.

¶ 29 Federal and state legislation has established medical payment systems utilizing DRGs for programs such as Medicare, Medicaid, and the Utah Children's Health Insurance Program. These programs are administered by the government and utilize public funds. The legislation furthers public policy concerns about the cost and efficiency of those systems. No cases have validated a similar program in the private sector absent legislative authorization. Public policy is the province of the legislative branch of government, not the judicial branch. Consequently, we hold that as a matter of contract law, IHC could not bill Maak for medical services after it had collected the full amount chargeable for those services from Maak's insurer. Therefore, we reverse the grant of summary judgment on Maak's breach of contract claim.

## II. Other Issues on Summary Judgment

¶ 30 In addition to granting summary judgment on Maak's contract claim, the trial court granted summary judgment on Maak's causes of action for common law fraud and misrepresentation, and deceptive trade practices. In her opening brief on appeal, Maak addresses these claims in a footnote, stating:

> The deceptive nature of this entry [in the billing statement] is at the core of Maak's final three claims asserted in her case. Each of these claims contains as a core element such deception, and the cryptic, inexplicable upward increase in the overall bill under an entry description of "Regence Blue Cross" satisfies the elements of these claims.

These issues are not mentioned in the opening sections of Maak's brief setting forth the issues presented. *See* Utah R.App. P. 24(a)(5) (stating that an appellant's brief shall contain a "statement of the issues presented for review, including for each issue: the standard of appellate review with supporting authority"). Not surprisingly, IHC asserts in its brief that Maak has waived these issues, as well as her claim for class certification, by not arguing them in her opening brief. IHC cites *Brown v. Glover*, 2000 UT 89, 16 P.3d 540, for the proposition that failure to argue issues in the opening brief constitutes waiver. *See id.* at ¶ 23. As stated in *Brown*, "[t]his is to prevent the resulting unfairness to the respondent if an argument or issue was first raised in the reply brief and the respondent had no opportunity to respond." *Id.* Maak counters in her reply brief by arguing that the footnote in her opening brief was sufficient to preserve the issues on appeal and proceeds to set forth more fully arguments about the deceptive nature of IHC's billing statement.[5]

¶ 31 The footnote in Maak's opening brief is inadequate to preserve these issues.

_____

5. Maak does not address the trial court's dismissal of her claims for violation of the Utah Insurance Fraud Act or deceptive trade practices. We therefore affirm summary judgment on those claims.

There is no meaningful analysis or citation to authority. *See* Utah R.App. P. 24(a)(5), (9). Development in the reply brief is not sufficient because IHC had "no opportunity to respond." *Brown*, 2000 UT 89 at ¶ 23. We therefore affirm summary judgment on Maak's claims other than breach of contract. Also, because the trial court did not address class certification that issue should be dealt with on remand.

## CONCLUSION

¶ 32 In sum, we reverse the grant of summary judgment on Maak's breach of contract claim and remand for further proceedings. We affirm the trial court's grant of summary judgment on Maak's other claims. We remand the issue of class certification.

¶ 33 I CONCUR: JAMES Z. DAVIS, Judge.

¶ 34 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Presiding Judge.