2016 UT App 73

## THE UTAH COURT OF APPEALS

ANN V. MAAK,
Appellant,
*v.*
IHC HEALTH SERVICES, INC.,
Appellee.

Opinion
No. 20140003-CA
Filed April 14, 2016

Third District Court, Salt Lake Department
The Honorable Kate A. Toomey
No. 030911869

Gregory M. Hess, Terry E. Welch, Breanne D. Fors,
and LaShel Shaw, Attorneys for Appellant

Alan C. Bradshaw, Steven C. Bednar, and Chad R.
Derum, Attorneys for Appellee

JUSTICE JOHN A. PEARCE authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.[1]

PEARCE, Justice:

¶1     Appellant Ann V. Maak appeals from the district court's
order granting IHC Health Services, Inc.'s (IHC) motion to
decertify a class and denying Maak's motion to amend the class
definition. Maak contends the district court abused its discretion
in so ruling. Maak also contends that the district court erred in

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

determining that IHC had not waived its counterclaims against class members. We are unable to discern the basis for the district court's conclusion that IHC did not waive its counterclaims. We therefore remand for the entry of a new decision on that issue— one that is accompanied by a development of the factual record and appropriate legal analysis. Because the district court relied on the viability of IHC's counterclaims in its decision to grant IHC's motion to decertify the class, we vacate the court's decertification decision for further consideration in light of the district court's resolution, on remand, of Maak's challenge to IHC's counterclaims. We also conclude that the district court's order does not permit us to determine whether it properly acted within its discretion in denying Maak's motion to amend the class definition, and we vacate that decision as well. We therefore remand the case to the district court for further consideration.

BACKGROUND[2]

¶2      Maak sued IHC, arguing that IHC had engaged in "fraudulent and improper billing practices." Maak alleged that IHC improperly overcharged her for medical care she had received and that the overcharges resulted from IHC's regular and systematic billing practices.

¶3      After Maak received treatment at LDS Hospital—an IHC facility—she received a statement of itemized charges totaling $11,396.11. Regence Blue Cross Blue Shield (Regence) provided health insurance to Maak at the time of her treatment. Regence reimbursed IHC $12,310.36 for Maak's treatment, an amount that

---

2. This recitation of the facts relies in part on the description found in *Maak v. IHC Health Servs., Inc.*, 2007 UT App 244, 166 P.3d 631. Additional factual background can be found there. *See id.* ¶¶ 2–5.

exceeded the itemized charges. Regence paid the greater amount because, "[p]ursuant to a contract between IHC and Regence, all medical procedures performed at LDS Hospital are classified in a Diagnostic Related Group (DRG), which Regence agrees to reimburse, at a predetermined fixed rate, without regard to the actual costs LDS Hospital incurs for the services." *Maak v. IHC Health Servs., Inc.*, 2007 UT App 244, ¶ 3, 166 P.3d 631. In addition to the payment it received from Regence, IHC billed Maak an additional $986.63 "based on Maak's twenty percent coinsurance obligation" her insurance contract with Regence imposed. *Id.* ¶ 4.

¶4      During discovery, an IHC employee explained the billing practices IHC employed when an insurer had agreed to reimburse IHC a fixed price for a medical procedure based on a DRG classification. In addition to reimbursing IHC based upon the DRG classification, the insurance company would "determine[] the patient's liability based on the benefits of [the patient's] particular [insurance] policy." The insurance company would then inform IHC of any responsibility for payment that the patient might owe under the insurer's agreement with the patient. For example, the contract between the insurer and insured might impose a coinsurance obligation on the patient.[3]

¶5      IHC would then combine the payment it received from the insurance company and "the amount due from the patient." If the combined amount did not match the original itemized charges of the insured's medical procedure, IHC's system would automatically make an adjustment to the account, which IHC terms a "contractual adjustment." The contractual adjustment

---

3. By way of example, Maak's contract with Regence required her to pay twenty percent of the covered procedure, subject to an annual cap, as her coinsurance obligation. *Maak v. IHC Health Servs., Inc.*, 2007 UT App 244, ¶ 4 & n.1, 166 P.3d 631.

was designed "to bring the charges in line with the terms of the reimbursement contract" between IHC and Regence. In cases where the sum of the amount IHC received from the insurer and the patient's responsibility exceeded the itemized charges, the contractual adjustment would be an additional amount posted to the patient's account. In cases where the sum of the insurer's payment and the patient's responsibility was less than the itemized charges, the contractual adjustment would reduce the patient's original itemized charges. Thus, where the insurer and IHC agreed to reimbursement based upon DRG classifications, IHC's billing system would adjust a patient's account so that the amount ultimately billed equaled the combined amount of the DRG reimbursement from the insurer and the amount of the patient's responsibility under the patient's insurance contract. This created a system where in some cases a patient and her insurance company would be charged more than the sum total of the patient's itemized charges and in other cases they would be charged less.

¶6     In this instance, IHC billed Maak for $986.63, her patient responsibility under her contract with Regence. Maak initially resisted IHC's efforts to collect but eventually paid the full amount. Maak continued to dispute IHC's ability to collect the coinsurance because "IHC already had been more than fully compensated by Regence for the hospital charges incurred on her behalf." *Id.* ¶ 4. Maak then sued IHC, on behalf of herself and a class of similarly situated patients for, among other causes of action, fraud and breach of contract. *See id.* The district court granted summary judgment to IHC on all of Maak's claims.

¶7     Maak appealed to this court and argued, among other things, that the district court erred in concluding that IHC's efforts to bill Maak in excess of the itemized charges did not breach Maak's contracts with IHC and Regence. *Id.* ¶ 7. We agreed with Maak and reversed the district court's grant of summary judgment on Maak's breach of contract claim. *Id.* ¶ 29.

We held "that as a matter of contract law, IHC could not bill Maak for medical services after it had collected the full amount chargeable for those services from Maak's insurer." *Id.* We then remanded the matter for a determination of whether Maak could satisfy the class certification requirements contained in rule 23 of the Utah Rules of Civil Procedure. *Id.* ¶ 32; *see also* Utah R. Civ. P. 23(a)–(b).

¶8      On remand, the district court conditionally certified the case as a class action. The court determined that all elements of rule 23 were conditionally satisfied, and certified a class of:

> All patients who at any time after or within six years prior to May 27, 2003 received medical services from an IHC-owned or operated medical facility or an IHC health-care provider of any kind and then were billed for amounts that, when collected, resulted in IHC receiving in combination from the patient's insurance company and the patient more than actual charges. Medicare patients are excluded.

Although it certified the class, the district court questioned whether "the class should include only individuals who were insured by Regence, or alternatively, patients, *regardless of insurer*, who were billed for amounts that resulted in IHC receiving from the insurer and patient more than the actual expenses." The court ultimately concluded, "Unless a patient's insurance company's contract with the patient grants IHC the right or obligation to collect a co-payment from a patient, the identity of the insurer is irrelevant to the fact that IHC breached its contract with the patient . . . ." Because the court certified the class in the midst of discovery, it had insufficient information to determine if other insurance companies' contracts were similar to Regence's. Thus, the court "conditionally include[d] class members not limited to Regence insureds." The court cautioned

that the "class definition is conditional" and noted that rule 23 "permits an order on class certification to be altered or amended at any time before a decision on the merits." *See* Utah R. Civ. P. 23(c)(1).

¶9     Following class certification, the parties developed a two-stage discovery process to identify class members, designated as "Tier 1" and "Tier 2." In the first stage, IHC initiated an automated review of its records "to identify instances when [it] may have collected more than what was listed on" the patient's itemized statement. In the second stage, IHC organized "a manual audit of [its] patient files to identify instances in which IHC collected more than the itemized statements." The district court noted that this process identified 41,849 instances where IHC collected money in excess of an itemized statement. It also noted that the overcharges totaled roughly $9,500,000, with an average of more than $220 per instance.

¶10     In addition to collecting data regarding its billing of patients for more than their itemized charges, IHC identified instances when its billing practices led to "shortfalls between what patients and their insurers paid and what was listed on the itemized statements." IHC referred to this data as "Tier 1.5," and contended that approximately ninety percent of the class members had at some point paid less than their itemized statements. IHC then asserted counterclaims against Maak and the class members for those alleged shortfalls. IHC estimated that aggregate total damages for these counterclaims amounted to $220,000,000, with an average of $6,822 per instance.

¶11     Maak moved for summary judgment on IHC's counterclaims. Maak argued that IHC had no valid counterclaims for the so-called "shortfall amounts" and that even if it did, the claims failed because IHC had waived its right to bill and collect any "shortfall[s]." IHC opposed summary judgment, arguing that its counterclaims were valid and that it

had not waived its right to collect the shortfall amounts. Approximately six months later, Maak filed a notice to submit her summary judgment motion for decision. There is no indication in the record that the district court ever explicitly ruled on Maak's motion.

¶12   IHC then moved to decertify the class. IHC contended that decertification was appropriate because individual inquiry into each "patient's account and . . . insurance contract" was necessary prior to resolving the case. IHC also maintained that in thousands of cases, "critical documents such as [a patient's] Explanation[] of Benefits" were unavailable and it could not determine in those cases "why [it] collected more than the Itemized Statement when patient and insurer payments are combined." IHC argued that prior to the class adjudication, "an exhaustive analysis and adjudication of the individual facts of each and every case is necessary," which would lead to "thousands of mini-trials that are anathema to class action procedure."

¶13   IHC also claimed that, during discovery, it found evidence that many of the class members' insurance contracts were materially different from Maak's. In some instances, IHC insisted it could "conclusively demonstrate" that it was authorized to collect the overbilled amounts from the patient as a third-party beneficiary to the patient's insurance contract. In others, it argued that class members should be excluded "because their claims, if any, are governed by ERISA[4] or precluded by arbitration clauses [in the insurance contracts]." In addition, IHC believed many class members would likely be "exposed to claims from their insurers if the [district court]

---

4. The federal Employee Retirement Income Security Act (ERISA) creates standards and "safeguards" for certain employee benefit plans. *See* 29 U.S.C. § 1001 (2012).

rule[d] that patients are not responsible to pay [IHC] for the mandatory coinsurance, deductibles, and copayments" provided in their insurance contracts.

¶14   The court's ability to resolve the dispute on a class-wide basis was also undercut, IHC argued, by its counterclaims, which would require additional individualized adjudication and would create "misaligned" interests within the class due to many class members likely owing more "than they could ever expect to recover" from IHC. For all these reasons, IHC requested decertification of the class.

¶15   Maak opposed IHC's motion to decertify the class, but also moved to amend the class definition. Maak argued that despite the complex nature of the case, a "common question" bound the class together—the unlawfulness of IHC's practice of overcharging patients after having been fully reimbursed by their medical insurer—and that there was "more than a sufficient legal and evidentiary basis" to justify both a rejection of IHC's proposed decertification and a grant of Maak's request to amend the class definition.

¶16   Maak argued that rather than decertify the class, the court should amend the class to only include those who, according to the Tier 2 review, were overbilled "in the exact same way as Maak, as the result of a flat-fee [DRG reimbursement method] between IHC and the commercial insurer and the systematic IHC overbilling practices." Essentially, Maak argued that her proposed amended class met rule 23's class certification requirements for three reasons: (1) because this court held IHC's overcharging of Maak to be an unlawful breach of contract; (2) because all members of the proposed class had contracts with their insurers that were similar to Maak's, making IHC's overcharging unlawful in those instances; and (3) because any required individualized inquiry would be outweighed by the potential for the case's "class-wide resolution in a single stroke."

¶17　Maak proposed the class be amended to include:

> All patients who, at any time after or within six years prior to May 27, 2003, were insured by a commercial insurance company that had a [DRG], fee schedule, and/or per diem reimbursement agreement with IHC; received covered medical services from an IHC medical facility or other IHC health-care provider; and then were billed by IHC for those services in an amount that, when collected, resulted in IHC receiving a combined amount, from the commercial insurer's payments and the patient's subsequent payments for those services, that was more than IHC's itemized charges for those services.

This refined definition, Maak contended, would remedy the "infirmities alleged by IHC," while still holding IHC "to the results of the two-tiered process that it proposed, co-designed, and completed."

¶18　Maak also contended that class members should be included regardless of whether the member's Explanation of Benefits document (EOB) could be found because IHC had destroyed many of those documents after the case was filed. In Maak's view, IHC should not be allowed to argue that class membership would be difficult to determine for those who no longer have an EOB, because the EOBs were "solely in IHC's control and were destroyed by IHC, most of them *after* [the case] was filed."[5] For that reason, Maak claimed, the district court

---

5. To support this contention Maak maintained, "IHC has admitted that it has 'archived,' 'purged,' and 'not retained' the EOBs, including as late as July 2007, four years *after* Maak filed [suit]."

"should rule that all inferences from the missing EOBs . . . be drawn in favor of the Class" based on the doctrine of spoliation of evidence, and that even class members without EOBs should be considered properly included in the class. Alternatively, Maak contended, "[E]ven if the Court were to exclude claims with missing EOBs . . . a group of thousands of patients with millions of dollars of damages would remain appropriate for class adjudication."

¶19    Addressing IHC's counterclaims, Maak argued that the counterclaims would not impede class-wide adjudication because IHC had "intentionally and unequivocally" waived those claims by voluntarily collecting less than the amounts it had sent to the patients in their itemized charges. Maak also argued that IHC's counterclaims were not compulsory and therefore asked that they "be dealt with in a separate suit rather than being allowed to defeat the Class."

¶20    Following extensive briefing, the district court granted IHC's motion to decertify the class and denied Maak's motion to amend the class definition. The court found that although IHC had collected amounts from class members in excess of their respective itemized charges, "the reasons for [the overpayments] are many and are not necessarily the result of a systematic billing practice in violation of the [parties'] contractual relationships." The court concluded, "[T]here are [no longer] questions of law or fact common to the class and . . . the claims or defenses of the representative parties are [no longer] typical of the claims or defenses of the class."

¶21    The court next concluded that it was "not feasible to determine on a class-wide basis whether individuals [were] even appropriately included in the conditional class, and whether liability exists." The court highlighted several factual scenarios that would exclude some members from the class, including:

1) where the combined payments from the patient and insurer do not exceed IHC's itemized charges; 2) where the circumstances of the individual case are inconsistent with the conditional class definition; 3) where the patient did not experience a loss; and 4) where IHC was not at fault for the overpayment.

¶22    The court determined that "there can be no uniform alignment of interests, and no ability to generalize causation, injury, and liability" when thousands of class members were "subject to counterclaims that might involve widely varying degrees of damages." The court was also "concerned about the potential conflict of interest between [Maak] and class members who might be subject to those counterclaims." It concluded, "Those potential counterclaims are no longer speculative, were not waived by IHC, and warrant decertification."

¶23    Finally, the district court addressed Maak's proposed amended class definition. It reasoned, "[T]he re-defined class essentially asks the Court to adopt an adverse [inference] against IHC, which is not appropriate, and in any event, the problem remains that establishing causation and damages would still require individualized adjudications to determine the facts of each specific case."

¶24    The district court concluded that it had "no alternative but to decertify the conditionally certified class" and to deny Maak's motion to amend the class definition. Maak appeals.

ISSUES AND STANDARDS OF REVIEW

¶25    Maak first contends that the district court erred as a matter of law in holding that IHC had not waived its counterclaims. "[W]hether the [district] court employed the proper standard of [contractual] waiver presents a legal question

which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court deference." *Meadow Valley Contractors, Inc. v. Department of Transp.*, 2011 UT 35, ¶ 13, 266 P.3d 671 (alterations in original) (citation and internal quotation marks omitted).

¶26    Maak next contends that the district court abused its discretion in granting IHC's motion to decertify the class. The district court's decision to certify or decertify "a claim as a class action is within the sound discretion of the district court." *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 12, 240 P.3d 769 (citation and internal quotation marks omitted); *see also Houghton v. Department of Health*, 2008 UT 86, ¶ 15, 206 P.3d 287. "A trial court's decision on class action status will be reversed only when it is shown that the trial court misapplied the law or abused its discretion." *Jaques*, 2010 UT 54, ¶ 12 (citation and internal quotation marks omitted); *see also id.* ¶ 35 (determining that a district court did not abuse its discretion in finding that the party had met one element of rule 23(a) of the Utah Rules of Civil Procedure and holding "it is within the discretion of the [district] court to decertify [a] class"); *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) ("We review . . . the merits of [the district court's class certification] determination for an abuse of discretion."); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 459 (N.D. Ohio 2014) ("A district court retains significant discretion to make decertification and modification decisions and its decision is reviewed only for abuse of discretion." (citation and internal quotation marks omitted)). The district court abuses its discretion when its decision rests on an erroneous legal determination. *See Schroeder v. Utah Attorney General's Office*, 2015 UT 77, ¶ 49, 358 P.3d 1075 ("[L]egal errors, such as the incorrect interpretation of a statute or the application of an improper legal standard, are usually an abuse of discretion.").

¶27 Finally, Maak contends that the district court abused its discretion in denying her motion to amend the class definition. We review this decision for abuse of discretion. *Jaques*, 2010 UT 54, ¶ 12; *see also Vallario*, 554 F.3d at 1264.

ANALYSIS

¶28 Maak and IHC agree that we review the district court's class-decertification decision for abuse of discretion. They disagree, however, over when a district court abuses that discretion. There exists little Utah case law addressing motions to decertify. Maak attempts to fill this void with cases from outside of our jurisdiction; Maak argues that these cases suggest that once a district court has certified a class, it has an obligation to take all steps necessary to try to maintain the viability of that class. *See, e.g.*, *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984) ("[I]t is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can easily be created."); *Chisolm v. TransSouth Fin. Corp.*, 194 F.R.D. 538, 554 (E.D. Va. 2000) ("Prior to decertification, the Court must consider all options available to render the case manageable."). IHC points to decisions highlighting the considerable discretion afforded to district courts in managing class action litigation. *See, e.g.*, *Shook v. Board of County Comm'rs of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008) ("When applying an abuse of discretion standard of review, we necessarily recognize that there may be no single right answer to the question at hand, but a range of possible outcomes sustainable on the law and facts, and we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." (citation and internal quotation marks omitted)).

¶29 The Utah Supreme Court has explained that "[o]ne reason . . . district courts are allowed such broad discretion is that rule 23(c)(1) of the Utah Rules of Civil Procedure grants the district court the ability to alter or amend the order of class certification

before the decision on the merits." *Jaques*, 2010 UT 54, ¶ 35. The court reasoned, "[I]f it becomes necessary, the class action may be amended to contain subclasses to meet the factual pattern of the case."[6] *Id.* And "if it is found by the district court that the individual transactions of the class members are too varied to be categorized into subclasses, it is within the discretion of the [district] court to decertify the class." *Id.* Nothing in the supreme court's analysis of rule 23 supports the hard-and-fast rule Maak advocates—that a district court must take all steps necessary to preserve the class action. Indeed, the plain language of rule 23 provides that a case "*may* be maintained as a class action" if the court finds that the plaintiff has satisfied certain requirements. Utah R. Civ. P. 23(a)–(b) (emphasis added). Likewise, the supreme court has consistently referred to what the court *may* do and not what it *shall* do in response to challenges to class certification or composition. *See Jaques*, 2010 UT 54, ¶ 35; *see also Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980) ("If the criteria of Rule 23 are complied with, it is within the sound discretion of the district court to determine whether a suit, or some of the issues in a lawsuit, should proceed as a class action.").

¶30    The breadth of that discretion does not, however, mean that the district court can deny a motion to certify without carefully considering the motion and setting forth the reasons underlying the exercise of its discretion. *See Richardson*, 614 P.2d at 639 ("It is the duty of the district court to apply carefully the criteria set forth in Rule 23(a) and (b) to the facts of the case to

---

6. Utah Rule of Civil Procedure 23(c)(4) provides, "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Utah R. Civ. P. 23(c)(4).

determine whether an action may be maintained as a class action."); *see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) ("[T]he district court has an independent obligation to conduct a 'rigorous analysis' before concluding that Rule 23's requirements have been satisfied." (citation omitted)). The district court must also create an order sufficient to allow a reviewing court to understand the basis of its reasoning before the reviewing court can afford deference to the district court's decision. *See Richardson*, 614 P.2d at 639 (holding, among other things, that the district court committed reversible error by certifying a class action when "neither the memorandum decision nor the order of the district court does any more than recite that the suit may be maintained as a class action"); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275–80 (11th Cir. 2009) (holding that the district court abused its discretion by failing to conduct a sufficient typicality and superiority analysis of the class certified by the court, and criticizing the court's failure to "even attempt to describe whether and how [the representative party's] claims are typical of the remaining class that [the court] actually certified"); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321–23, 327 (3d Cir. 2008) (vacating the district court's class-certification order and remanding for further proceedings because, among other things, the court failed to undertake a sufficient analysis); *State ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 782–83 (W. Va. 2004) (concluding that a circuit court committed reversible error by failing to provide sufficient analysis and factual findings to support its class-certification decision).

¶31 The same considerations apply to a class-decertification motion. A district court must carefully analyze whether the certified class continues to meet rule 23's requirements. *Richardson*, 614 P.2d at 639. The rigorous analysis demanded by rule 23 requires the district court to "do more than offer brief and conclusory statements establishing the Rule 23 prerequisites." *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651

(C.D. Cal. 2000). Rather a district court "must offer written reasons supporting its decision to maintain class certification, or, alternatively, to decertify the action." *Id.*

¶32    Indeed, the need for a thorough explanation of the district court's reasoning becomes even more pronounced on a motion to decertify because the district court does not write on a blank slate. "Once a class is certified, the parties can be expected to rely on it and conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will not be altered except for good cause." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 409–10 (C.D. Cal. 2000) (citation and internal quotation marks omitted). This reliance entitles the parties to a careful analysis of the rule 23 requirements and a reasoned explanation of why the case can no longer be maintained as a class action. Moreover, a reviewing court needs the benefit of the district court's analysis to evaluate whether the court has properly exercised its discretion.

¶33    In the context of a motion to amend the class definition, rule 23 explicitly recognizes that a class-certification order "may be altered or amended before the decision on the merits." Utah R. Civ. P. 23(c)(1). Although we find no support in Utah law for Maak's argument that the district court must take all steps necessary to preserve a certified class, our rules of civil procedure and supreme court case law permit the district court to consider whether the original class should be divided into subclasses. *See* Utah R. Civ. P. 23(c)(4); *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 35, 240 P.3d 769. Further, when presented with a motion to amend a class, the district court must carefully analyze the proposed amended class under rule 23's requirements and clearly articulate its reasoning as to why the amended class either would or would not satisfy rule 23. *See Richardson*, 614 P.2d at 639; *see also In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 603–05 (D. Kan. 2012) (reviewing a motion to amend a class by comparing the then-

current class definition with the plaintiff's proposed class definition).

## I. IHC's Counterclaims Against Class Members

¶34 Against this backdrop, we examine whether the district court properly exercised its discretion in decertifying the class. Among Maak's many arguments aimed at demonstrating that the district court abused its discretion, she contends that the court improperly relied on the purported difficulties IHC's counterclaims presented for class treatment.

¶35 Maak correctly asserts that IHC's counterclaims played a role in the district court's decision to decertify the class. IHC's counterclaims are, in essence, its attempt to collect the full amount of a patient's itemized charges in those instances where its agreement with an insurer led it to collect less than the patient's full itemized charge for the applicable medical procedures. *See supra* ¶¶ 3–5. The district court concluded that "with thousands of people identified in the Tier 2 analysis subject to counterclaims that might involve widely varying degrees of damages, there can be no uniform alignment of interests, and no ability to generalize causation, injury, and liability." The court was also concerned with the counterclaims' potential to create a conflict of interest between Maak and other class members who may or may not be subject to suit based on the counterclaims.

¶36 Maak argues that the district court abused its discretion in considering the counterclaims as part of its decertification calculus because IHC had waived its counterclaims as a matter of law. We cannot determine on the record before us whether the district court correctly concluded that IHC had viable counterclaims that it had not waived.

¶37 "Waiver is an intentional relinquishment of a known right." *Meadow Valley Contractors, Inc. v. Department of Transp.*,

2011 UT 35, ¶ 45, 266 P.3d 671 (citation and internal quotation marks omitted). "Waiver of a contractual right occurs when a party to a contract intentionally acts in a manner inconsistent with its contractual rights, and, as a result, prejudice accrues to the opposing party or parties to the contract." *Id.* (citation and internal quotation marks omitted). "Waiver can be implied from conduct, such as making payments or accepting performance which does not comport with contractual requirements." *Anderson v. Brinkerhoff*, 756 P.2d 95, 98 (Utah Ct. App. 1988). For conduct to amount to an implied waiver of a contractual right, it must be intentional, *Meadow Valley*, 2011 UT 35, ¶ 45, and must be done "in a manner that is unambiguous," *McCleve Props., LLC v. D. Ray Hult Family Ltd. P'ship*, 2013 UT App 185, ¶ 10, 307 P.3d 650 (citation and internal quotation marks omitted).

¶38 In the context of assessing whether a party has waived its rights under a contract, the supreme court has held that "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it." *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 28, 245 P.3d 184 (citation and internal quotation marks omitted). "[S]ophisticated business parties are charged with knowledge of the terms of the contracts that they enter into." *Id.* Such parties to a contract are "'not permitted to show that [they] did not know [a contract's] terms, and in the absence of fraud or mistake [they] will be bound by all its provisions, even [if they have] not read the agreement and do not know its contents.'" *McCleve*, 2013 UT App 185, ¶ 12 (alterations in original) (quoting *ASC Utah, Inc.*, 2010 UT 65, ¶ 28). Thus, a "party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *See John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987); *see also McCleve*, 2013 UT App 185, ¶ 12. Where a contract provides a discernible right and the party intentionally acts inconsistently with that right, the party may not later feign ignorance to avoid the waiver of that right. *See McCleve*, 2013 UT App 185, ¶¶ 12–13.

¶39    Maak points to IHC's admission, "When we enter into those arrangements with the insurance plan, we've agreed to make an adjustment on the patient account and only hold the patient responsible for the deductible co-insurance or co-pay that's determined by their plan benefit." Maak also highlights IHC's statement that "if the DRG payment was less than the itemized charges, and the patient's payment still didn't make up to the itemized charges, [the remaining amount due] would show as a credit." Thus, "[w]hen the sum of the insurer's DRG payment and the patient's payments [was] still less than the itemized charges," IHC would amend the bill to "show[] a current balance of zero" so long as the patient paid his or her co-payment or obligation under the contract with his or her insurance company.

¶40    Maak also argues that IHC's right to collect the shortfall amounts—the basis of its counterclaims—"did not suddenly spring into existence" with our statement in *Maak v. IHC Health Services, Inc.*, 2007 UT App 244, 166 P.3d 631, that "when a health care provider has not been fully paid for its services, it can collect the difference from a patient pursuant to its contract with the patient." *See id.* ¶ 28. She contends that our statement was a mere recognition of existing law, not the creation of a new legal right, and thus, IHC had a right "to collect the shortfall amounts . . . at the time [it] billed the patients."

¶41    Finally, Maak asks us to infer that "until filing the counterclaims," "IHC had no intention of collecting any shortfall amounts" because it would, of its own accord, change an otherwise unfulfilled charge to a balance of zero, and because IHC's own witness admitted that he could not recall any time where "IHC [had] ever attempted to collect [the unpaid amounts] from any patient whose insurer paid under the DRG reimbursement method."

¶42 Maak concludes, "[The undisputed facts] demonstrate that IHC intentionally and unequivocally waived its purported counterclaims against any and all members of the Class by 'accepting performance [that did] not comport with contractual requirements [of its Patient Agreement].'" (Second and third alterations in original.) (Quoting *Anderson*, 756 P.2d at 98.)

¶43 IHC responds that its right to pursue the counterclaims did not exist until our prior decision in this matter. It insists that our 2007 ruling "changed the legal landscape and altered the understanding" of its contractual agreements and "[o]nly then did [it] know it had an independent right to collect shortfall[s] 'pursuant to its contract with the patient.'" (Citation omitted.) IHC also disputes Maak's characterization of its counterclaims. IHC argues, based on the many individual reimbursement agreements, that "individual adjudication is required for each class member to determine whether the waiver defense Maak raises applies."[7] Finally, IHC contends that Maak incorrectly assumes that, in its reimbursement agreements with insurers other than Regence, IHC limited its ability to collect more than the patients' deductible or coinsurance obligation determined by their benefit plan. IHC contends that because "Maak has no evidence" that all insurer agreements are similar to Regence's, she cannot establish that IHC waived its right to collect the shortfall amounts against the class.

¶44 The district court appears not to have explicitly ruled on Maak's motion for summary judgment on IHC's counterclaims. Instead, the district court, in its final order granting decertification of the class, ruled that IHC's counterclaims "are

---

7. IHC does not elucidate its argument that a waiver determination would need to be made for each individual class member. Nor does the district court's order analyze why waiver could not be adjudicated on a class-wide basis.

no longer speculative, were not waived by IHC, and warrant decertification." That sentence, together with a recognition that Maak's interests might conflict with other class members due to the counterclaims, constitutes the district court's entire factual and analytical discussion of whether IHC had waived its counterclaims and how the presence of those claims impacted the rule 23 factors.

¶45 The district court's order does not provide us any insight into why it concluded the counterclaims had not been waived, nor does it indicate what record evidence supports its determination. "Failure of the [district] court to make findings on all material issues is reversible error." *Hill v. Estate of Allred*, 2009 UT 28, ¶ 59, 216 P.3d 929 (citation and internal quotation marks omitted); *see also Tillotson v. Meerkerk*, 2015 UT App 142, ¶ 14, 353 P.3d 165 (vacating the district court's denial of a motion to intervene and remanding the case because neither the district court's "order nor the minute entry provides any explicit findings or articulates any basis for the district court's denial of the motion," and thus the appellate court could not "ascertain the basis of the [district] court's decision" (citation and internal quotation marks omitted)). "[W]here the inadequacy of the trial court's findings of fact and conclusions of law results in our inability to ascertain the basis of the [district] court's decision, [we are] prevented from effectively reviewing the [district] court's decision and may remand for the entry of more-detailed findings." *Allen v. Ciokewicz*, 2012 UT App 162, ¶ 42, 280 P.3d 425 (third alteration in original) (citation and internal quotation marks omitted).

¶46 Without insight into the district court's reasoning, "we are unable to ascertain whether the [district] court's Order follows logically from, and is supported by, the evidence." *See Interstate Income Props., Inc. v. La Jolla Loans, Inc.*, 2011 UT App 188, ¶ 14, 257 P.3d 1073 (citation and internal quotation marks omitted). Accordingly, we vacate the district court's ruling with respect to

the waiver of IHC's counterclaims and remand to the district court to determine the issue anew and to provide the written analysis necessary to ensure that its legal conclusion flows logically from, and is supported by, the record evidence.

## II. The District Court's Decertification of the Class

A.      Rule 23's Class Certification Requirements

¶47      Maak contends that the district court abused its discretion in decertifying the class because "this action presents a quintessential case for class-action adjudication"—a resolved legal question imposing liability in a variety of similar factual scenarios.

¶48      Rule 23 of the Utah Rules of Civil Procedure sets forth the criteria for the certification of a class action suit. A class may be certified under rule 23 only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Utah R. Civ. P. 23(a). "These four criteria are respectively referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 23, 240 P.3d 769. Further, to maintain a class action, the case must "fall[] into one of the three categories found in rule 23(b)." *Id.* ¶ 24. Applicable here, to maintain a class action the court must determine that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." Utah R. Civ. P. 23(b)(3). These two concepts, enunciated in rule 23(b)(3), are referred to as predominance and superiority, respectively. *See Jaques*, 2010 UT 54, ¶ 24.

B.     The District Court's Order Granting IHC's Motion to Decertify the Class

¶49     The district court concluded that, as a result of "the parties' extensive discovery efforts," the class no longer satisfied the requirements of commonality, typicality, predominance, adequacy of representation, and superiority under rule 23 of the Utah Rules of Civil Procedure. The court found that the contractual agreements governing many of the class members' claims were "materially different from [Maak's]," that "most overbillings [were] not in a context similar to [Maak's]," and that identifying class members would require "individualized adjudications." Thus the court concluded that the claims of the current class did not satisfy rule 23's class certification requirements.

¶50     As part of its determination, the district court reasoned that IHC's counterclaims weighed in favor of decertifying the class:

> [W]ith thousands of people identified in the Tier 2 analysis subject to counterclaims that might involve widely varying degrees of damages, there can be no uniform alignment of interests, and no ability to generalize causation, injury, and liability. Additionally, given the pendency of what are now clearly significant counterclaims, the Court is concerned about the potential conflict of interest between [Maak] and class members who might be subject to those counterclaims. Those potential counterclaims . . . warrant decertification.

¶51    Because we have determined that the district court must revisit its holding with respect to IHC's counterclaims, and because the district court relied upon the viability of IHC's counterclaims in its decision to grant IHC's motion to decertify the class, we vacate the district court's grant of that motion. We decline to substantively review the district court's decertification decision because it may be affected by the district court's decision on remand. If the court determines on remand that IHC's counterclaims are, in fact, waived, then it should conduct a new decertification analysis without regard to IHC's counterclaims. If the court concludes that IHC has not waived its counterclaims, the district court should specifically address how the presence of those counterclaims affects the rule 23 analysis.[8]

---

8. Maak challenges several other aspects of the district court's decertification decision. For example, Maak also argues that the district court erred by allowing IHC to benefit from the missing EOBs. IHC argues that if EOBs were available, they would show that a number of class members do not qualify for class membership. IHC also argues that by asking that patients without EOBs be included in the class, Maak essentially asked the district court to adopt an inference adverse to IHC—an inference that IHC argues is unwarranted because IHC could not have known that it needed to preserve the EOBs. Maak contends that she did not ask the district court to sanction IHC based upon its alleged spoliation of evidence, only that IHC not be permitted to enjoy a positive inference from the missing evidence. *See generally Ockey v. Club Jam*, 2014 UT App 126, ¶ 11, 328 P.3d 880 (acknowledging that Utah Rule of Civil Procedure 37 affords district courts broad discretion "to determine if a party's [spoliation of evidence] justifies the imposition of sanctions and, if so, which sanction is appropriate to the circumstances"). The district court appears to have not expressly

(continued…)

¶52 Because the issue may arise on remand, we also address Maak's argument that, even if IHC did not waive its counterclaims, the district court incorrectly determined that it had "no alternative" but to decertify in the face of IHC's counterclaims. *See Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 363–64 (S.D. Ga. 1996) (recognizing that courts handle counterclaim issues "differently" in the class action context, such as by severing class members or by prosecuting claims separately, but recognizing that permissive counterclaims, "by themselves, will not defeat certification"); *Walczak v. Onyx Acceptance Corp.*, 850 N.E.2d 357, 371 (Ill. App. Ct. 2006) (concluding that "generally, individual counterclaims or defenses do not render a case unsuitable for class action" because counterclaims only reduce damages awards and do not affect the underlying finding of liability). Maak notes that courts around the country have adopted procedures to permit class actions to proceed despite the assertion of counterclaims against class members. *See, e.g.,* *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1116 (5th Cir. 1978) (directing that counterclaims against a class may be managed by "adopting standards and classifying the claims," such as

---

(…continued)
addressed the issue, other than to state in the decertification order that "the re-defined class essentially asks the Court to adopt an adverse [inference] against IHC, which is not appropriate." Because of the factual issues to be resolved with respect to IHC's destruction of the EOBs, and the district court's broad discretion to craft appropriate remedies for spoliation, these arguments are best resolved by the district court in the first instance. Remand will permit Maak to renew her arguments with respect to spoliation and the other errors she argues on appeal and permit the district court to address them in the context of the other decisions before it on remand. Remand will also provide the district court an opportunity to fully explain the basis for its decisions.

"excluding counter-claim defendants from the plaintiff class or separating and severing the class into two different classes, one with counter-claims and one without counter-claims"); *Partain v. First Nat. Bank of Montgomery*, 59 F.R.D. 56, 59 (M.D. Ala. 1973) (concluding that it is appropriate for a district court to "exercise its discretion under Rule 23 [of the Federal Rules of Civil Procedure] to define the scope of the class by deleting from the proposed class all those persons" subject to counterclaim liability).

¶53 Utah law does not require a district court to sua sponte consider all options that it could employ to salvage a problematic class definition. We conclude, however, that when a party specifically proposes a mechanism to ameliorate concerns with class treatment, the district court must undertake a rigorous analysis and explain the basis for its decision to reject the proposed approach and to instead decertify the class. Accordingly, if the district court concludes that IHC has not waived its counterclaims and that such counterclaims cause the proposed class to fall short of rule 23's strictures, the district court should specifically analyze any proposal Maak presents to address the proposed counterclaims. This is not to suggest that the district court must adopt any such proposal, only that it may not, without consideration and analysis, reject an attempt to salvage a class.

¶54 Accordingly, we vacate the district court's order decertifying the class and remand the issue for reconsideration.

### III. Maak's Motion to Amend the Class Definition

¶55 Maak also contends that the district court abused its discretion in denying her motion to amend the class definition. Maak argues that a proper class exists and that her amended class definition satisfies the elements of rule 23 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 23(a)–(b).

¶56    The district court determined,

> [A]lthough [Maak] has proposed a new class definition, the re-defined class essentially asks the Court to adopt an adverse [inference] against IHC, which is not appropriate, and in any event, the problem remains that establishing causation and damages would still require individualized adjudications to determine the facts of each specific case. The Court has no alternative but to decertify the conditionally certified class.

Maak argues that this decision constitutes an abuse of discretion because "a proper class of some size exists." Maak also argues that "[i]n a great number of cases" the relevant documents exist sufficient to establish "that the contractual adjustment at issue must have been made as a result of the billing policies [determined to be] in breach of Maak's Patient Agreement." Thus, she argues, class action status is proper for some portion of the initial class, "even if it is smaller than the class as originally certified or the proposed amended Class that was the focus of Maak's Motion to Amend."[9]

---

9. It bears noting that on remand, Maak cannot simply argue that a proper class of some size must exist and ask the district court to establish the boundaries of that hypothetical class. *See* Utah R. Civ. P. 23(b) (setting out that an action may be maintained as a class if the plaintiff satisfies the prerequisites to a class action in rule 23(a) and (b)); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) (holding that rule 23 of the Federal Rules of Civil Procedure "requires a potential class representative" to establish that the class satisfies each of the rule's elements); *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 372 (E.D. Ark. 2007) (same); *Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 546 (D. Idaho

(continued…)

¶57 The record before us does not permit us to evaluate the merits of Maak's arguments. The district court's order simply concludes that with Maak's proposed amended class, "establishing causation and damages would still require individualized adjudications" and would require "the Court to adopt an adverse [inference] against IHC." The district court's order does not explain why the narrower class Maak proposed would require individualized determinations that would either prevent common issues from predominating or prevent class-action treatment from being a superior method of resolving this dispute. Without application of the rule 23 factors to the amended class Maak proposed, we cannot determine if the district court properly exercised its discretion. *See Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980) (holding that the district court erred by insufficiently analyzing the class action certification requirements in rule 23); *cf. Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011) (highlighting the need for "'rigorous analysis' by the district court as to all the requirements" of rule 23 of the Federal Rules of Civil Procedure due to the "huge amount of judicial resources expended by class actions" and concluding that the "absence of analysis" is reversible error); *Ex parte Am. Bankers Life Assurance Co. of Fl.*, 715 So. 2d 186, 190–91 (Ala. 1997) (requiring the district court to "identify each of the four elements" of Alabama's class-certification rule and requiring that its analysis "not simply parrot the language of Rule 23(a) [of the

---

(…continued)
2010) ("The party seeking certification bears the burden of showing that each of the four requirements in Rule 23(a) are met and one of the conditions in Rule 23(b) is met."). The district court is not required to play the role of Goldilocks and test the universe of potential classes until it finds one that is "just right." The party seeking an amendment of the class should propose a class definition for the court to analyze.

Alabama Rules of Civil Procedure] but [instead] provide a written rigorous analysis of each element and explain how the proponents of class certification have met their burden of proving these elements").

¶58    We therefore vacate the district court's order denying Maak's motion to amend the class definition and remand for further consideration. On remand, the court should review the dimensions of Maak's amended class definition to determine specifically whether it satisfies the class certification requirements of rule 23 of the Utah Rules of Civil Procedure. The court should undertake the rigorous analysis rule 23 demands, and its written order should specifically analyze why Maak's amended class definition either does or does not meet each element of rule 23. *See Richardson*, 614 P.2d at 639.[10]

CONCLUSION

¶59    We vacate the district court's order granting IHC's motion to decertify the class and denying Maak's motion to amend the class definition. We remand the case for (1) a redetermination of Maak's argument that IHC has waived its counterclaims to allow the court to provide a developed explanation of its reasoning, (2) a new consideration of IHC's motion to decertify the class to

---

10. In vacating the district court's order denying Maak's motion to amend the class definition and remanding the case, we do not foreclose the district court's ability, under the Utah Rules of Civil Procedure, to address any procedural, or other, issues that may arise or to set a course of proceedings for the case. *See* Utah R. Civ. P. 23(d) (providing that the district court may, among other things, "impos[e] conditions on the representative parties" and "determin[e] the course of proceedings or [prescribe] measures to prevent undue repetition or complication in the presentation of evidence or argument").

permit the district court to revisit that order in light of its resolution of the issue of the continuing viability of IHC's counterclaims and any other issues that may arise on remand, and (3) further consideration of Maak's motion to amend the class definition to permit the district court to perform the rigorous analysis that rule 23 of the Utah Rules of Civil Procedure demands.

––––––––––